******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICHARD GIATTINO *v.* COMMISSIONER
OF CORRECTION
(AC 37496)

Lavine, Keller and Flynn, Js.

*Submitted on briefs September 14—officially released December 6, 2016*

(Appeal from Superior Court, judicial district of Tolland, Fuger, J.)

*Jennifer B. Smith*, assigned counsel, filed a brief for the appellant (petitioner).

*Maureen Platt*, state's attorney, *Leon F. Dalbec, Jr.*, senior assistant state's attorney, and *Eva B. Lenczewski*, supervisory assistant state's attorney, filed a brief for the appellee (respondent).

*Opinion*

KELLER, J. The petitioner, Richard Giattino, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. He claims that the habeas court erred when it (1) declined to conduct an in camera review of school records pertaining to the victim[1] of the underlying crimes; and (2) rejected the petitioner's claim that his criminal trial counsel rendered ineffective assistance. We decline to reach the merits of the petitioner's first claim, and conclude that the habeas court did not err with regard to the second claim. We therefore affirm the judgment of the habeas court.

In 2011, the petitioner was convicted, following a trial to the court, *Prescott, J.*, of two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1),[2] and one count of injury or risk of injury to, or impairing the morals of, a child in violation of General Statutes § 53-21 (a) (2).[3] Aside from concluding that the prosecution proved each element of the crimes beyond a reasonable doubt, the trial court did not set forth detailed factual findings in rendering its determination of guilt. On the basis of its findings, however, we can conclude that the trial court was persuaded by evidence of the following facts.

The petitioner married the victim's mother in 2009 and shortly thereafter began residing with her and her family. During the relevant time period, the petitioner, the victim's mother, the victim, and the victim's three younger siblings all occupied a three bedroom apartment in Naugatuck. The petitioner was then forty-eight or forty-nine years old, and the victim was fourteen years old. The victim's boyfriend, Brandon Jones, then seventeen years old, and a family friend, Scott Beasley, also lived with the family in the apartment for substantial periods of time.

At the beginning of the marriage between the petitioner and the victim's mother, the victim's relationship with the petitioner was, by the victim's account, warm and close. The victim, who had no relationship with her biological father, considered the petitioner "like my father figure." The petitioner would take the victim and her siblings for rides on his motorcycle and to a park to play. The victim would confide in the petitioner about personal problems, such as if she had an argument with her boyfriend.

That relationship, however, soon began to change. One day the petitioner approached the victim to talk about sex. As the victim later testified at trial: "[the petitioner] would say that he wanted to talk to me about having sex because . . . I was a virgin, and he wanted me to not be scared for the situations that I would have when I was older and I did start having sex." The victim testified that as a result of this conversation she "was

in shock . . . cause I really didn't think that he would say something like that . . . cause I considered him like my father."

The petitioner then took things further. During one instance in which he approached the victim and started to talk about sex, the petitioner began kissing the victim on her mouth and breasts, stopping only when her mother entered the house. The victim described several more instances of sexual contact with the petitioner. The second instance occurred when the victim stepped out of the shower to find the petitioner standing in the bathroom. The petitioner began kissing the victim's mouth and breasts and inserted his fingers into her vagina. The third incident occurred as the victim was changing clothes in the bathroom. The petitioner entered and again began kissing the petitioner's mouth and breasts and digitally penetrated her. The fourth incident occurred when the victim was again in the bathroom, this time arranging her hair and texting on her phone. As the victim was sitting on the toilet, the petitioner entered the bathroom and approached her. After a few moments, the petitioner exposed his penis and, as the victim testified, "pushed [her] head forward and . . . made [her] move [her] mouth on his penis." The victim testified that she did not remember any of the dates on which the incidents occurred, but that they all happened in the "summertime" of 2009.[4] She later testified that "[i]t was at . . . the end of the summertime that this all started that we were just starting to go back to school." When asked by the court whether "summertime" meant "like, August," the victim responded affirmatively.

The victim reported the abuse to Jones and then to her mother. The victim's mother forced the petitioner to leave the apartment. Shortly thereafter, the victim's mother took the victim to the family's nurse practitioner, Judy Moskal-Kanz, for a physical examination. The victim recounted the sexual abuse to Moskal-Kanz. Moskal-Kanz did not find any physical evidence of sexual abuse as a result of the physical examination. After the appointment with Moskal-Kanz, the victim reported the abuse to a detective at the Naugatuck Police Department and an investigator with the Department of Children and Families (department).

The petitioner was represented at trial by public defender Tashun Bowden-Lewis. The prosecution's case-in-chief consisted of testimony from the victim, the victim's mother, Jones, Beasley, Moskal-Kanz, and the department investigator. The petitioner's case-in-chief consisted solely of his own testimony, in which he denied the allegations. In closing argument, the petitioner highlighted inconsistencies in the victim's testimony and prior statements, as well as the lack of any physical evidence of abuse. The petitioner also contended that the victim had fabricated the charges to

retaliate against the petitioner because he had earlier, along with the victim's mother, ordered Jones to move out of the apartment. After a two day trial, the court found the petitioner guilty of the previously discussed three counts. The court sentenced the petitioner to a total effective term of twenty years imprisonment, execution suspended after twelve years, and twenty years of probation.

In 2014, the petitioner, represented by Attorney Jason C. Goddard, filed an amended petition for a writ of habeas corpus, wherein the petitioner alleged that his criminal trial counsel rendered ineffective assistance by, inter alia, failing to obtain records pertaining to the victim, including the victim's school records, in addition to other alleged failures in the pretrial investigative process. After a trial, the habeas court, *Fuger, J.*, for reasons detailed below, denied the petition but granted the petitioner certification to appeal. The petitioner then brought the present appeal.

I

The petitioner first claims that the habeas court erred when it declined to conduct an in camera review of the victim's school records. The respondent, the Commissioner of Correction, argues, however, that the habeas court merely issued a preliminary denial as to the school records, and that because the petitioner did not renew his motion for an in camera review, the petitioner failed to preserve the issue for appeal. We agree with the respondent, and accordingly decline to review the merits of this claim.

The following additional information is relevant to our discussion. Prior to the habeas trial, the petitioner filed a motion with the habeas court requesting disclosure of, inter alia, "[a]n unredacted copy of the victim's school records" from two high schools she attended. The petitioner did not provide any reasons in the motion as to why such records would contain exculpatory information.

The petitioner subpoenaed the records from the Naugatuck public schools, and an attorney for the schools brought the records, under seal pursuant to General Statutes § 10-15b,[5] to the court on the morning of the habeas trial. At the beginning of the trial, the habeas court questioned the petitioner as to the relevancy of the victim's school records. The petitioner's attorney responded in part: "During the trial [the victim] had indicated . . . that one of the instances [of abuse] occurred. She recalled one of the instances because she had gotten into trouble in school that day.[6] So, I looked to—to verify that—sort of, to see if there was any—any truth to that, and . . . I needed the school records to see if there was any sort of disciplinary action taken in and around the time . . . of the incident." (Footnote added.)

After several more exchanges, the court stated: "Well . . . at this point I don't see any reason that I need to examine them. . . . Again, I'm not going to categorically rule out that there's that possibility because I haven't heard anything, but based on what I have heard, it doesn't seem like it's too likely . . . . I'm going to allow the subpoenaed records to be lodged with the court. . . . Now, both of these records [the school records and other records the petitioner subpoenaed] shall remain sealed. In the event we get to the point that I think it might be necessary to determine whether they should be unsealed, then we'll bring that up on a second day of trial, so that I don't have to tie up [the individuals who brought the records to the court]. So, I'm going to put the onus on you, Mr. Goddard, to— you know, you've got to convince me that you're over the hurdle . . . . Until that, I'm not going to order them unsealed. Is that clear?" The petitioner's attorney replied that it was.

Although the petitioner questioned his criminal trial counsel at the habeas trial concerning the latter's decision not to seek disclosure of the school records, the petitioner never renewed his motion for in camera review of the records or otherwise sought a definitive ruling from the court on the matter before the close of evidence. In lieu of oral closing arguments, the petitioner and the respondent submitted posttrial briefs.

The following legal principles govern our disposition of this claim. "Practice Book § 60-5 provides in relevant part that [t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . . For us [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge. . . . We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal." (Internal quotation marks omitted.) *Ferraro* v. *Ridgefield European Motors, Inc.*, 313 Conn. 735, 758–59, 99 A.3d 1114 (2014). Our Supreme Court has concluded that the failure to renew a motion following a preliminary denial results in abandonment of that claim on appeal. See, e.g., *State* v. *Francis*, 246 Conn. 339, 352, 717 A.2d 696 (1998) ("because the trial court had ruled only preliminarily and allowed the defendant the opportunity to renew this line of questioning once its relevancy had been established, we conclude that this issue is not reviewable").

At the outset, we conclude that the previously discussed ruling of the habeas court was a preliminary one. It was, therefore, "incumbent on the [petitioner]

to seek a definitive ruling . . . in order fully to comply with the requirements of our rules of practice for preserving his claim of error . . . ." *State* v. *Johnson*, 214 Conn. 161, 170, 571 A.2d 79 (1990). The fact that the ruling was preliminary, and that the petitioner was free, at a point later in the habeas trial, to make his offer of proof as to the relevancy of the school records, is plain from the language of the habeas court, which clearly placed such burden on the petitioner.[7]

The petitioner argues that this issue was subsequently preserved because, first, "he explicitly addressed how the records would have been favorable to the defense in his posttrial brief," and, second, the habeas court "expressly ruled on the claim in its memorandum of decision . . . ." We address, and dispose of, each argument in turn.

First, even assuming, arguendo, that the petitioner could successfully renew his motion for in camera review after the close of evidence in a posttrial brief, our review of the brief discloses that he made no such request. To be sure, the petitioner's posttrial brief argued that his criminal trial counsel performed deficiently in not obtaining the victim's school records. The petitioner thus claims that he renewed his motion for in camera review in his posttrial brief because he "thoroughly marshaled the evidence . . . to show how the victim's educational records would have been important to obtain to impeach the victim's credibility, and how they contained information that would have been material to his defense." This argument is without merit. It was not the habeas court's responsibility to divine the petitioner's intent, or, sua sponte, to raise again the issue of in camera review. We thus reject the petitioner's argument that his posttrial brief somehow served to renew his motion to conduct an in camera review of the victim's school records.

We are likewise not persuaded by the petitioner's second argument that the habeas court "did not consider [his] claim abandoned because it expressly ruled on the claim in its memorandum of decision . . . ." In its memorandum of decision, the habeas court concluded in part: "The petitioner asserts that his trial defense counsel failed to locate and introduce pertinent evidence that would have led the trial judge to conclude that the petitioner was not guilty. Nevertheless, the petitioner introduced no evidence that had any probative value to show that there was any such exculpatory material out there. To be sure, the petitioner tried to engage in speculative explorations of medical, psychological, and school records of the victim, but since the petitioner did not offer anything concrete to even suggest that there was any reliable admissible evidence contained therein, these records were not unsealed."

We do not believe that this portion of the habeas court's memorandum of decision constitutes a "ruling"

on a motion for in camera review of the school records, particularly in light of the fact that, as explained previously, the petitioner did not renew his motion for in camera review in his posttrial brief or otherwise. Rather, the court appeared merely to be referencing its preliminary ruling on the motion, not articulating a new one. Accordingly, the petitioner's request for in camera review of the victim's school records is not deemed preserved merely because the habeas court briefly addressed the issue in its memorandum of decision.

As a final matter, we address the petitioner's argument, made in passing in his appellate brief, that the habeas court erred because it "appeared to have assumed, without conducting a complete factual inquiry, that the victim would not consent to the release of her educational records." The petitioner refers to a point in the habeas trial when the court, the petitioner, and the respondent discussed whether the victim would waive her right to confidentiality as to certain sealed records that the petitioner subpoenaed. The relevant portion of that discussion is as follows:

"The Court: . . . I have two sealed envelopes here with material that apparently you've subpoenaed. . . . One is the—[the petitioner's] medical file. I presume you have—since you subpoenaed it, that you have no objection to [it] being unsealed.

"[The Petitioner's Counsel]: No objection, Your Honor. . . .

"The Court: And then I have some information from the Wheeler Clinic. . . . Ms. [Eva B.] Lenczewski [counsel for the respondent], do you know if the person who's referred to in these records intends to waive the confidentiality of the records?

"[The Respondent's Counsel]: Your Honor, I've not had any contact with her. I can't imagine that she would. This was a—

"The Court: Well, she might. I don't know.

"[The Petitioner's Counsel]: Well, she's here today. I—

"The Court: I . . . I have no idea, first of all, who she is. I presume that you might, Ms. Lenczewski.

"[The Respondent's Counsel]: I would presume that that is a record of the victim, the minor child at the time, and I would object to any—even questioning her about the consent to open them. It sounds like it's a fishing expedition.

"The Court: Well, I can't say it's a fishing expedition yet, but it certainly is beginning to have that appearance. But the first question is, whether it is or it isn't . . . would you be able to discuss with the person to whom the records pertain as to whether he or she would be willing to waive confidentiality? If so, then that elimi-

nates a lot of problems. If not, then—well, we're right where we are anyway.

"[The Respondent's Counsel]: I would do that if Your Honor wished. I'm told by counsel that the individual is present, and he'll . . .

"The Court: You've never spoken to her, I take it?

"[The Respondent's Counsel]: I have never met her.

"The Court: So, you don't know her?

"[The Respondent's Counsel]: No.

"The Court: In the most broad terms possible, what is it you expect to see in these records?"

Citing no legal authority, the petitioner argues that the habeas court erred when, after the preceding colloquy, it "immediately turned to the question of whether the petitioner had made the requisite showing to overcome a lack of consent, without having confirmed that the victim had, in fact, decided not to waive her consent." The record reveals, however, that this discussion was confined to the subject of the victim's confidential mental health records. There was no discussion during the habeas trial as to whether the victim should be asked to consent to an in camera review of her confidential school records. Moreover, our review of the record shows that the petitioner did not raise this claim before the habeas court. Accordingly, we elect not to review its merits. See *Ferraro* v. *Ridgefield European Motors, Inc.*, supra, 313 Conn. 758–59.

II

The petitioner next claims that the habeas court erred when it rejected his claim that his criminal trial counsel rendered ineffective assistance. Specifically, the petitioner claims that his criminal trial counsel was deficient in failing (1) to adequately cross-examine the victim about, inter alia, inconsistencies in her testimony, and (2) to obtain the victim's school records. The petitioner also argues that these deficiencies were prejudicial to him. For the reasons provided below, the petitioner cannot prevail on these claims.

A

The petitioner first claims that his criminal trial counsel performed deficiently in cross-examining the victim. More specifically, the petitioner asserts that counsel failed to challenge the victim with respect to "several glaring inconsistencies" in her testimony and failed to adequately cross-examine her in order to establish a more definite time period during which the alleged instances of abuse occurred. The respondent argues, however, that these issues are not reviewable because the petitioner failed to raise them in his amended habeas petition, and the habeas court did not address their merits in its decision. We agree with the respondent and therefore decline to review the merits of this claim.

The following legal principles guide our analysis. "Practice Book § 60-5 provides . . . that [t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." (Internal quotation marks omitted.) *Ferraro* v. *Ridgefield European Motors, Inc.*, supra, 313 Conn. 758–59. "A petition for a writ of habeas corpus must set forth specific grounds for the issuance of the writ. Practice Book § 23-22 (1) specifically provides that the petition shall state the specific facts upon which each specific claim of illegal confinement is based and the relief requested . . . . A reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court. . . . Appellate review of claims not raised before the habeas court would amount to an ambuscade of the [habeas] judge." (Internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, 131 Conn. App. 336, 351, 27 A.3d 404 (2011), aff'd, 312 Conn. 345, 92 A.3d 944 (2014).

As to the petitioner's argument that his criminal trial counsel was deficient in failing to challenge the victim with respect to inconsistencies in her testimony, the petitioner identifies two such inconsistencies. The first occurred when, at the criminal trial, the victim testified that the petitioner had abused her five times,[8] in contrast to a statement to the police in which she reported six to seven instances. The second claimed inconsistency occurred when, as previously discussed in footnote 4 of this opinion, in response to a question from the prosecution as to whether the petitioner initiated any other sexual contact with the victim in the petitioner's bedroom, the victim recounted another incident that did not involve any physical contact. In his amended habeas petition, the petitioner did not assert these claims of failure to explore inconsistencies in the victim's testimony, nor did the habeas court, in its written memorandum of decision, address them. We therefore decline to reach the merits of these claims.

As to the petitioner's argument that his criminal trial counsel was deficient in failing to adequately cross-examine the victim in order to establish a more definite time period during which the alleged instances of abuse occurred, thereby forgoing an opportunity to impeach the victim or develop an alibi defense, this particular claim also does not appear in the amended habeas petition, nor did the habeas court address the matter. We therefore decline to reach the merits of this claim as well.

In his reply brief, the petitioner nonetheless argues that the preceding issues were preserved because, first, in his amended habeas petition, he asserted that his criminal trial counsel was ineffective for failing to obtain the victim's school records. The petitioner continues: "The sole purpose in obtaining these records was to cross-examine, impeach, or otherwise challenge

the victim's testimony. There was no other reason to obtain these records." Such a position essentially obligates the habeas court to divine the petitioner's intent. To the contrary: it is the petitioner's responsibility to clearly present his claim to the habeas court, as well as the specific facts upon which his claim relies. See *Rodriguez* v. *Commissioner of Correction*, supra, 131 Conn. App. 351.

Second, the petitioner argues that he properly raised these claims because, in his posttrial brief, he asserted: "Counsel failed to obtain documentary evidence that would have compromised the victim's credibility, failed to adequately cross-examine the victim regarding her glaring inconsistencies, many of which proved the incidents could not have happened." The petitioner's posttrial brief goes on to discuss alleged ineffectiveness by his criminal trial counsel for, inter alia, failing to adequately cross-examine the victim about the time line of the abuse. However, we again observe that "[a] reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court." (Internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, supra, 131 Conn. App. 351; see also *Elsey* v. *Commissioner of Correction*, 126 Conn. App. 144, 169, 10 A.3d 578 ("[i]t is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the appellant's claim." [Internal quotation marks omitted.]), cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011). Thus, even if we were to conclude that the petitioner raised in his posttrial brief his claim that his criminal trial counsel was ineffective in cross-examining the victim, such claim would still be unpreserved on appeal because the petitioner did not distinctly raise it in his habeas petition, nor did the habeas court specifically rule on it in its memorandum of decision. We therefore decline to review the merits of the petitioner's claim that his criminal trial counsel was ineffective for failing to adequately cross-examine the victim.

B

The petitioner next claims that his criminal trial counsel performed deficiently because she did not obtain the victim's school records. The petitioner asserted this claim in his amended habeas petition, as well as in his posttrial brief. Furthermore, the habeas court addressed this issue in its memorandum of decision. The petitioner has therefore preserved this claim for

appeal. However, for the reasons provided below, the petitioner cannot prevail with respect to this claim.

We begin with the applicable standard of review. "[T]he right to counsel is the right to the effective assistance of counsel. . . . There are two components of a claim of ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 424, 589 A.2d 1214 (1991).

"The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . Whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 597–98, 940 A.2d 789 (2008).

The habeas court concluded with regard to this claim: "The petitioner asserts that his trial defense counsel failed to locate and introduce pertinent evidence that would have led the trial judge to conclude that the petitioner was not guilty. Nevertheless, the petitioner introduced no evidence that had any probative value to show that there was any such exculpatory material out there. To be sure, the petitioner tried to engage in speculative explorations of medical, psychological, and school records of the victim, but since the petitioner did not offer anything concrete to even suggest that there was any reliable admissible evidence contained therein, these records were not unsealed. . . . Simply put, there is no basis at all in any of the evidence put forth to conclude that [the petitioner's criminal trial counsel] was in any way ineffective."

The petitioner claims that "[t]here was no reasonable strategic basis for [the petitioner's criminal trial counsel] not to obtain the victim's [school] records because the prosecuting authority's case was based entirely on the credibility of the victim, and the only information that she had to undermine the credibility of the victim was obtained from biased sources." The petitioner argues that had his criminal trial attorney obtained the records, she would have been able to, first, impeach the victim by revealing that she had been skipping school and was suspended for stealing, and that she deceived her parents as to her involvement in both of these activities; and, second, establish a time line of

the abuse that could have led to the development of an alibi defense. We address, and dispose of, each argument as follows.

As to the petitioner's argument that the victim's school records would have disclosed material with which to impeach the victim's credibility—namely, that the victim had been skipping school and was suspended for stealing—the problem, of course, is that because the habeas court did not unseal the victim's school records, we do not in fact know whether those factual assertions are correct.[9] Thus, we cannot conclude on this basis that the petitioner's criminal trial counsel performed deficiently in failing to obtain the victim's school records.

We likewise find no merit in the petitioner's second argument that, had his criminal trial counsel obtained the victim's school records, "she could have used them to cross-examine the victim about the date that school started and narrow down the time line of the five incidents of sexual abuse." The petitioner's argument in this regard appears to proceed as follows: the petitioner's criminal trial counsel failed to obtain the victim's 2009–2010 school calendar,[10] which would have shown that the victim began school on August 27, 2009. Using this date and the victim's testimony concerning the time line of the abuse, including, apparently, her testimony that one incident occurred on the afternoon of a day when she had been disciplined at school, the petitioner reasons that the instances of abuse could have occurred only within a period of three consecutive days in late August, 2009. The petitioner continues: "Had trial counsel narrowed down the time line of the abuse to a three day period, she could have developed an alibi defense to present at the petitioner's trial."

This argument relies on a faulty factual premise, to wit: the victim testified that all of the instances of abuse occurred in August, 2009. The more plausible reading of the victim's testimony is that the abuse merely *began* in August, 2009, at about the time that the victim's school year began.[11] Moreover, this claim rests on the unproven premise that, had specific dates been identified by means of the calendar and other school records, the petitioner could have provided compelling alibi evidence for such dates.[12] This being the case, we fail to see how the victim's school calendar or disciplinary record (the existence of which, we have noted, is entirely conjectural at this point) provide any material exculpatory to the petitioner. See *Griffin* v. *Commissioner of Correction*, 119 Conn. App. 239, 241–42, 987 A.2d 1037 ("[i]n a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . *but by demonstrable realities*" [emphasis in original; internal quotation marks omitted]), cert. denied, 295 Conn. 912, 989 A.2d 1074 (2010).

Accordingly, the habeas court's conclusion that the petitioner failed to demonstrate that his criminal trial counsel performed deficiently was not in error, as there is no evidence that the victim's school records contained evidence that could have been employed to exonerate the petitioner. Consequently, we need not address the petitioner's prejudice argument. See *Ham* v. *Commissioner of Correction*, 301 Conn. 697, 704, 23 A.3d 682 (2011) ("[a] court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong, whichever is easier").

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than three years older than such other person . . . ."

[3] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts . . . of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

[4] When asked by the prosecution on direct examination whether the petitioner initiated any other sexual contact with her in the bedroom belonging to the petitioner and the victim's mother, the victim recounted another incident that occurred between the third and fourth incidents described previously. As the victim described it, however, the encounter did not involve any physical contact between her and the petitioner. The victim testified that she entered the bedroom to find the petitioner sitting on the bed watching television. The victim testified that "I stood there for a second, I was watching a show with him, and he got up and I was—was going to go into the bathroom to use the bathroom, and he got up and he stood in front of me and I was—I just—like, I kept my head down, I didn't really—I didn't even look at him, I kept my head down and I—when I looked—I looked up cause he said—he was, like, [victim's name], I looked up, and I was, like, what? He said—I—and he—my little brother had to come home, and he knocked on the door and he sat back down, and I opened the door and I walked out and I left."

[5] General Statutes § 10-15b (c) provides in relevant part: "If any private or public school is served with a subpoena issued by competent authority directing the production of school or student records in connection with any proceedings in any court, the school upon which such subpoena is served may deliver such record or at its option a copy thereof to the clerk of such court. . . . Any such record or copy so delivered to such clerk shall be sealed in an envelope . . . . No such record or copy shall be open to inspection by any person except upon the order of a judge of the court concerned, and any such record or copy shall at all times be subject to the order of such judge. . . ."

[6] In her testimony in the criminal trial, the victim indicated that the third instance of sexual abuse described previously occurred on a day when her school called home to report that she "had gotten into trouble . . . ."

[7] This conclusion is further borne out by the fact that the court ordered the sealed records lodged with it until their relevancy was established.

[8] We note that one of these instances, as described by the victim, did not involve physical contact. See footnote 4 of this opinion.

[9] To be sure, the petitioner testified before the habeas court that the victim was disciplined by her school for stealing a cell phone. However, in its memorandum of decision, the habeas court concluded in part: "The peti-

tioner is deemed not to be credible as almost all of his statements in his testimony were self-serving and unworthy of belief." As explained previously, we must accept the credibility determinations of the habeas court unless they are clearly erroneous. See *Crawford* v. *Commissioner of Correction*, supra, 285 Conn. 597. Our review of the record does not reveal, and the petitioner has not identified, any evidence persuading us that this credibility determination is clearly erroneous. Additionally, the petitioner presented no evidence purporting to show that the victim had been skipping school.

[10] For reasons that are not immediately apparent, the petitioner seems to equate the victim's generic school calendar with her confidential school records. There is no evidence that the victim's school calendar, which was entered as an exhibit in the habeas trial, is confidential.

[11] As previously discussed, the victim initially testified before the trial court that the instances of abuse happened in the "summertime" of 2009. However, after being prompted to clarify by the trial court, she stated that "[i]t was at . . . the end of the summertime that this all started that we were just starting to go back to school." When asked by the court whether "summertime" meant "like, August," the victim answered, "Yes."

[12] It is perplexing that the petitioner argues that his criminal trial counsel performed deficiently for failing to pursue an alibi defense, while at the same time providing no information whatsoever as to what that alibi might have been, despite the fact that, under the petitioner's (albeit flawed) reasoning, "[t]here was only a three day period in which the five [instances of abuse] could have occurred." (Emphasis omitted.)