******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# RICARDO PEREIRA *v.* COMMISSIONER OF CORRECTION
## (AC 39401)

DiPentima, C. J., and Alvord and Bear, Js.

*Syllabus*

The petitioner, who had been convicted of murder and kidnapping in the first degree, sought a writ of habeas corpus, claiming that his due process rights were violated as a result of his kidnapping conviction. The petitioner claimed that, in light of the reinterpretation of this state's kidnapping statutes in *State* v. *Salamon* (287 Conn. 509), which was decided after his conviction, his kidnapping conviction should be vacated. Pursuant to *Salamon*, to commit kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime. The petitioner's conviction stemmed from an incident in which he was in a parked car with the victim when he became enraged, and punched and strangled her. The victim fought back and fled from the car, after which the petitioner drove the car into her, ran over her, dragged her along the road, and then exited the car and kicked her numerous times, resulting in her death. The petitioner claimed that, because the events inside the car were a separate, uncharged assault against the victim, he was entitled to a jury instruction pursuant to *Salamon* because the petitioner's restraint of the victim was incidental to the uncharged assault. He also claimed that there was a single, continuous crime, starting when he first struck the victim inside the car and ending with her death, and that, because he was charged with kidnapping and murder, he was entitled to a *Salamon* instruction. The habeas court rendered judgment denying the petition and, thereafter, denied the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court did not abuse its discretion in denying the petition for certification to appeal, and, accordingly, the appeal was dismissed: the petitioner's claim regarding the kidnapping charge and the uncharged assault while the petitioner and the victim were inside the car was not reviewable, as the petitioner failed to raise the claim in his posttrial brief, in his habeas petition, or in his petition for certification to appeal, and the habeas court did not address the issue in its memorandum of decision; moreover, the petitioner could not prevail on his claim that he was entitled to a *Salamon* instruction on the ground that the restraint that occurred in the car was merely incidental to the commission of the murder, as the petitioner's restraint of the victim inside the car was completed before the petitioner engaged in the conduct that caused the victim's death, and, thus, the restraint inside the car, which had criminal significance independent of the events that occurred after the victim escaped from the car, was not necessary to complete the murder, and this court was not persuaded that this issue was debatable among jurists of reason, that it could have been resolved by a court in a different manner, or that it presented a question that was adequate to deserve encouragement to proceed further.

Argued May 22—officially released September 26, 2017

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Fuger, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Michael W. Brown*, assigned counsel, for the appellant (petitioner).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Ricardo Pereira, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal from the denial of his habeas petition and (2) improperly denied his habeas petition. We conclude that the habeas court did not abuse its discretion in denying certification to appeal. Accordingly, we dismiss the petitioner's appeal.

The following facts and procedural history are relevant to our discussion. In March, 2000, the petitioner was convicted of murder in violation of General Statutes § 53a-54a (a) and kidnapping in the first degree violation of General Statutes § 53a-92 (a) (2) (A). The court, *Espinosa*, *J.*, sentenced the petitioner to sixty years incarceration on the murder charge and fifteen years incarceration on the kidnapping charge, with the sentences to be served consecutively, for a total effective sentence of seventy-five years incarceration. This court affirmed his conviction on direct appeal. *State* v. *Pereira*, 72 Conn. App. 545, 805 A.2d 787 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003).

The petitioner filed his first habeas action on October 24, 2003. Following a trial, the first habeas court denied the habeas petition, and this court dismissed the appeal. *Pereira* v. *Commissioner of Correction*, 101 Conn. App. 397, 921 A.2d 665, cert. denied, 283 Conn. 906, 927 A.2d 918 (2007).[1] The petitioner commenced the present habeas action on May 2, 2013, and filed the operative petition on January 21, 2016. The petitioner alleged, inter alia, that his due process rights had been violated as a result of his kidnapping conviction. Specifically, he relied on our Supreme Court's decision in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), which was released nearly one decade after the petitioner's conviction. He argued that as a result of *Salamon*'s reinterpretation of our kidnapping statutes, his conviction of kidnapping should be vacated.

At the February 2, 2016 habeas trial, the parties agreed that certain documents, mostly transcripts, would be entered into evidence by stipulation in lieu of testimony. The parties further agreed to submit posttrial briefs in lieu of oral argument.[2] The court, *Fuger*, *J.*, issued its memorandum of decision on May 12, 2016. It denied the petition for a writ of habeas corpus, concluding that the petitioner was not entitled to a *Salamon* instruction[3] and that even if he was entitled to such an instruction, its absence constituted harmless error. The habeas court subsequently denied the petition for certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal. After reviewing the record and the applicable law, we conclude that the habeas court's denial of the petition for certification to appeal did not constitute an abuse of discretion. Accordingly, we dismiss the petitioner's appeal.

As an initial matter, we set forth our standard of review. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 821–22, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017); see also *Bridges* v. *Commissioner of Correction*, 169 Conn. App. 742, 747, 152 A.3d 71 (2016), cert. denied, 324 Conn. 917, 154 A.3d 1008 (2017).

The claim presented by the petitioner, aptly described by the habeas court as "relatively narrow and focused," is that the absence of the *Salamon* instruction constituted a violation of his right to due process. In reviewing this issue, we are mindful that the facts found by the habeas court are subject to the clearly erroneous standard of review. *Farmer* v. *Commissioner of Correction*, 165 Conn. App. 455, 458, 139 A.3d 767, cert. denied, 323 Conn. 905, 150 A.3d 685 (2016). "The applicability of

*Salamon* and whether the court's failure to give a *Salamon* instruction was harmless error are issues of law over which our review is plenary." Id., 459.

Next, we briefly summarize the evolution of our kidnapping law. At the time of the petitioner's conviction, our Supreme Court had established that "all that is required under the [kidnapping] statute is that the defendant have abducted the victim and restrained her with the requisite intent. . . . Under the aforementioned definitions, the abduction requirement is satisfied when the defendant restrains the victim with the intent to prevent her liberation through the use of physical force. . . . Nowhere in this language is there a requirement of movement on the part of the victim. Rather, we read the language of the statute as allowing the restriction of movement alone to serve as the basis for kidnapping. . . . [O]ur legislature has not seen fit to merge the offense of kidnapping with other felonies, nor impose any time requirements for restraint, nor distance requirements for asportation, to the crime of kidnapping. . . . Furthermore, any argument that attempts to reject the propriety of a kidnapping charge on the basis of the fact that the underlying conduct was integral or incidental to the crime of sexual assault also must fail." (Citation omitted; internal quotation marks omitted.) *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 745–46, 12 A.3d 817 (2011).

Subsequent to the petitioner's conviction of murder and kidnapping, "our Supreme Court reinterpreted the intent element of our kidnapping statutes. In *State* v. *Salamon*, supra, 287 Conn. 542, it stated: Our legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime.

"Our Supreme Court further noted that [w]hen that confinement or movement is merely incidental to the commission of another crime, however, the confinement or movement must have exceeded that which was necessary to commit the other crime. [T]he guiding principle is whether the [confinement or movement] was so much the part of another substantive crime that the substantive crime could not have been committed without such acts . . . . In other words, the test . . . to determine whether [the] confinements or movements

involved [were] such that kidnapping may also be charged and prosecuted when an offense separate from kidnapping has occurred asks whether the confinement, movement, or detention was merely incidental to the accompanying felony or whether it was significant enough, in and of itself, to warrant independent prosecution. . . . Conversely, a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime." (Internal quotation marks omitted.) *Robles* v. *Commissioner of Correction*, 169 Conn. App. 751, 754–55, 153 A.3d 29 (2016), cert. denied, 325 Conn. 901, 157 A.3d 1146 (2017). Finally, we note that in *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 773, our Supreme Court adopted a general presumption of retroactivity for *Salamon* in collateral proceedings. See also *Nogueira* v. *Commissioner of Correction*, 168 Conn. App. 803, 808, 149 A.3d 983, cert. denied, 323 Conn. 949,      A.3d      (2016).

Next, we turn to the facts underlying the petitioner's conviction. "At the time of the incident giving rise to his convictions, the [petitioner] was distraught because his former girlfriend had terminated their relationship. The [petitioner] still wanted to be with [her, but] she didn't want anything to do with [him]. In the wake of this loss, the [petitioner] spent a great deal of his free time at William MacLellan's small basement apartment in Waterbury. Through MacLellan, the [petitioner] met the victim, Lisa Orgnon, in October, 1997. Over the course of approximately one month, the [petitioner] and the victim socialized at drinking establishments in the Waterbury area a couple of times. The victim, MacLellan and the [petitioner] planned to spend the evening of November 18, 1997, together." (Internal quotation marks omitted.) *State* v. *Pereira*, supra, 72 Conn. App. 547.

Beginning at approximately 9 p.m., the victim, the petitioner and MacLellan went to two drinking establishments and consumed alcohol. Id., 547–48. After returning to MacLellan's apartment, the petitioner asked the victim to accompany him to a movie theater near his former girlfriend's home in Southington, while MacLellan elected to remain at his apartment. Id., 548.

The petitioner, who knew that the theater would be closed, feigned surprise at this fact and asked the victim to " 'drive around,' " but withheld information regarding their destination. Id. They ultimately drove to the neighborhood where his former girlfriend lived and parked on an adjacent street. Id. The petitioner "did not inform the victim that his former girlfriend lived in the area." Id.

"Although the reasons are unclear, the [petitioner]

suddenly got real mad at some point after the vehicle halted. In the [petitioner's] own words: You know, I just—I just lost control. And I just began, I began to swing at her. I don't know why but I started punching [the victim] in her face and head even though she had done nothing wrong. I punched her four or five times. *She just tried to get away.* The [petitioner] punched the victim with such force that days later, he had abrasions on his knuckles . . . . *As the victim attempted to get away from the [petitioner's] unprovoked assault, the [petitioner] grabbed her by the neck and began to strangle her.* The [petitioner] choked the victim, crushing her voice box and hemorrhaging the strap muscles in her neck. The [petitioner] strangled the victim with such force that the whites of her eyes turned blood red from petechial hemorrhaging of the capillaries in her conjunctiva. The victim buried her fingernails into the [petitioner]. Forensic analysis later revealed that nine of her ten fingernails had drawn blood in the melee. The [petitioner] sustained scratches on his face and neck, and all over his back and shoulders. Stymied by the victim's effective counterattack, the [petitioner] lost his grip on the victim's neck. She opened the door and began to spill out, head first, onto the street. The [petitioner] clutched and swiped at her in a futile effort to regain dominance, but the victim kicked at him, checking his renewed assault. The victim broke free and sprinted down the road, away from [petitioner]. The [petitioner] jumped into the driver's seat and gunned the engine, aiming the vehicle at the victim.

"The [petitioner] slammed the car into the victim. The front bumper shattered her right leg at a point nine inches from her heel. Expert forensic evidence introduced at trial indicated that this was a fairly typical pedestrian type [of] injury, where the bumper would strike the lower leg . . . . The vehicle's right front wheel ran over the victim and her body smashed into the undercarriage. The [petitioner] continued to run over the victim and felt the rear transaxle vault over her body. The [petitioner] later stated that he wasn't sure whether he put the car in reverse to run her over again. The street was littered with blood in a long trail resulting from how he, in his own words, dragged her up the road. [As a result, the victim sustained numerous and significant injuries.] . . .

"The [petitioner] then stopped the car, stepped out and approached the victim's body. In his own words, the [petitioner] kicked the victim in the head and neck five or six more times until she wasn't moving at all [anymore]. Finally satisfied that he had killed the victim, the [petitioner] dragged her body out of sight, hiding it in some icy brush over a ridge at the side of the road. The [petitioner] drove the victim's car back to his home town of Waterbury and dumped it in a church parking lot. He walked the rest of the way home.

"The victim . . . died in the early morning of November 19, 1997. The medical examiner certified the cause of death to be multiple blunt force trauma of the head and chest. The medical examiner found no sign of any natural cause that would otherwise account for her death.

"It was life as usual for the [petitioner] that day. He awoke at the ordinary time and arrived at the site of his job with his father's construction company. However, after the victim's mother reported the victim missing, the Naugatuck police interrupted the [petitioner's] schedule, asking him for information. The [petitioner] initially denied ever being with the victim in Southington, telling the police that the victim drove [him] directly home after dropping MacLellan at his house. After the body was found, however, the [petitioner] admitted that he had, in fact, killed her." (Emphasis added; footnotes omitted; internal quotation marks omitted.) *State* v. *Pereira*, supra, 72 Conn. App. 549–51.

The petitioner's appellate brief presents two specific and distinct theories that, in his view, warranted a *Salamon* instruction. First, the petitioner claims that "the events inside of the car were a separate, uncharged assault against the victim" and that he was entitled to a *Salamon* instruction because the restraint was incidental to that uncharged assault.[4] Second, the petitioner contends that there was a single, continuous crime, starting when he first struck the victim inside the car and ending with her death, and because he was charged with kidnapping and murder, he was entitled to a *Salamon* instruction. With respect to the former claim, the respondent, the Commissioner of Correction, counters that this theory was not raised before and never decided by the habeas court. As to the latter contention, the respondent maintains that the habeas court properly concluded that because the restraint and confinement of the victim occurred separately from and were completed prior to the murder, the kidnapping was not incidental to and necessary for the murder, and, therefore, a *Salamon* instruction was not required. We agree with the respondent with respect to both theories.

A

We first address the petitioner's claim regarding the uncharged assault that occurred inside the car. The operative petition for a writ of habeas corpus contained two broad allegations: first, that his due process rights were violated as a result of the kidnapping conviction, and, second, at the time of the conviction, "the kidnapping statute was invalid and unconstitutional."[5] The petitioner failed to include a specific allegation regarding the kidnapping charge and an uncharged assault while the petitioner and victim were inside the car. Similarly, in his posttrial brief, the petitioner again failed

to present this specific claim; instead, he focused on continuing criminal conduct involving the crimes of murder and kidnapping. Finally, the habeas court's memorandum of decision did not address the issue of the kidnapping charge and the uncharged assault.

The petitioner failed to raise before the habeas court a *Salamon* claim as to the uncharged assault that occurred in the car. "A reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court. . . . Appellate review of claims not raised before the habeas court would amount to ambuscade of the [habeas] judge." (Citations omitted; internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, 129 Conn. App. 188, 198, 19 A.3d 705, cert. denied, 303 Conn. 901, 31 A.3d 1177 (2011); see also *Giattino* v. *Commissioner of Correction*, 169 Conn. App. 566, 580, 152 A.3d 558 (2016); *Taylor* v. *Commissioner of Correction*, 154 Conn. App. 686, 701, 108 A.3d 238 (2015) (specific claim of ineffective assistance of counsel not reviewed on appeal), aff'd, 324 Conn. 631, 153 A.3d 1264 (2017); *Trotter* v. *Commissioner of Correction*, 139 Conn. App. 653, 657 n.2, 56 A.3d 975 (2012) (same), cert. denied, 308 Conn. 901, 60 A.3d 286 (2013).

Additionally, the petition for certification to appeal from the denial of his habeas petition did not include a *Salamon* claim on the basis of the uncharged assault.[6] We have stated that "[b]ecause it is impossible to review an exercise of discretion that did not occur, we are confined to reviewing only those issues which were brought to the habeas court's attention in the petition for certification to appeal." (Internal quotation marks omitted.) *Blake* v. *Commissioner of Correction*, 150 Conn. App. 692, 697, 91 A.3d 535, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014); see also *Stenner* v. *Commissioner of Correction*, 144 Conn. App. 371, 374–75, 71 A.3d 693, cert. denied, 310 Conn. 918, 76 A.3d 633 (2013); *Campbell* v. *Commissioner of Correction*, 132 Conn. App. 263, 267, 31 A.3d 1182 (2011); *Mercado* v. *Commissioner of Correction*, 85 Conn. App. 869, 872, 860 A.2d 270 (2004), cert. denied, 273 Conn. 908, 870 A.3d 1079 (2005). For these reasons, we decline to consider this claim.[7]

### B

We now turn to the petitioner's claim that there was a single, continuous crime, starting when he struck the victim inside the car, and ending with her death outside of the car. The petitioner contends that, contrary to the conclusion reached by the habeas court, he was entitled to a *Salamon* instruction because the evidence reasonably supported a finding that the restraint that occurred in the car was merely incidental to the commission of the murder. We disagree.

Following the *Salamon* reinterpretation, "to commit

a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime. . . . [T]here are instances where a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case." (Citation omitted; internal quotation marks omitted.) *Eric M.* v. *Commissioner of Correction*, 153 Conn. App. 837, 843–44, 108 A.3d 1128 (2014), cert. denied, 315 Conn. 915, 106 A.3d 308 (2015).

A brief recitation of the facts and circumstances of this case is necessary to explain why there was not a single, continuous crime in this case and therefore a *Salamon* instruction was not required in conjunction with the murder charge. At the criminal trial, the state produced evidence that the petitioner had been sitting with the victim in a car parked near his former girl-friend's house. He suddenly began to strike her in the face. During this altercation, the victim attempted to escape from inside the car, and partially fell out of the car. At one point, the petitioner had either his hands or arm around her neck. The petitioner admitted to a police officer that he performed this action for two reasons: first, he wanted to prevent the victim from getting away from him, and, second, to choke her. Despite the petitioner's assault, the victim was able to free herself from the petitioner's restraint, to escape from the interior of the car and to sprint down the road. The petitioner then moved to the driver's seat, and he drove the car into and over the victim, dragging her up the road. He exited the car, kicked the victim numerous times in the face and body, dragged her across the street and left her behind the brush.

As a general matter, when the state charges a defendant with kidnapping and another criminal offense, a *Salamon* instruction ordinarily must be given. *White* v. *Commissioner of Correction*, 170 Conn. App. 415, 425, 154 A.3d 1054 (2017); see also *State* v. *Fields*, 302 Conn. 236, 247, 24 A.3d 1243 (2011). If, however, the restraint that forms the basis for the kidnapping has criminal significance separate from the underlying offense, then the instruction is not required. *State* v. *Fields*, supra, 248. Put another way, "our Supreme Court limited *Salamon* to cases in which the state cannot establish that the restraint involved had independent criminal significance as the predicate conduct for a kidnapping." *State* v. *Golder*, 127 Conn. App. 181, 190, 14 A.3d 399, cert. denied, 301 Conn. 912, 19 A.3d 180 (2011).

The present case differs from the majority of other cases involving *Salamon* claims;[8] that is, the criminal conduct inside the car had been completed prior to the commission of the murder.[9] The petitioner committed a kidnapping when both he and the victim were inside the car; namely, after he began to strike her, he grabbed her by the neck and he strangled her. He admitted to the police that this was done with a dual purpose—to choke the victim and to keep her from getting away. Despite his efforts, the victim was able to break free from the petitioner's restraint and get out of the car. Our Supreme Court has stated that a kidnapping, a crime involving the interference with a victim's liberty, ends when that liberty has been restored. *State* v. *Gomez*, 225 Conn. 347, 351, 622 A.2d 1014 (1993). The victim freed herself from the petitioner's restraint by getting out of the car, and thus the criminal conduct inside the car had been completed. At that point, the petitioner moved to the driver's seat, and he drove the car into the victim, eventually causing her death.

Because the criminal conduct that occurred inside the car had been completed before the murder, that conduct had criminal significance independent from the events that occurred after she escaped. See *State* v. *Ayala*, 133 Conn. App. 514, 523, 36 A.3d 274, cert. denied, 304 Conn. 913, 40 A.3d 318 (2012). In other words, because that criminal conduct was completed before the petitioner's actions that caused the death of the victim, the restraint was not necessary to complete the murder. See *State* v. *Golder*, supra, 127 Conn. App. 190. This restraint had its own independent significance separate from the subsequent murder. See id., 191. Therefore, the rule of *Salamon* does not apply. See id., 190.

In sum, we conclude that the two crimes of which the petitioner was convicted were sufficiently disconnected; see *Wilcox* v. *Commissioner of Correction*, 162 Conn. App. 730, 747, 129 A.3d 796 (2016); therefore, a *Salamon* instruction was not required. Further, we are not persuaded that this issue was debatable among jurists of reason, could be resolved in a different manner, or presented a question that was adequate to deserve encouragement to proceed further. Accordingly, we conclude that the habeas court did not abuse its discretion in denying certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner had claimed that he received the ineffective assistance of trial counsel and that he had been denied access to counsel. *Pereira* v. *Commissioner of Correction*, supra, 101 Conn. App. 398. The habeas court rejected both of these claims, and denied certification to appeal. Id. On appeal, this court concluded that the petitioner failed to establish that the habeas court abused its discretion in denying certification to appeal. Id., 400–401.

[2] In his posttrial brief, the petitioner argued that "it was an ongoing struggle, from the moment that the petitioner initially hit the victim, it was a

continuous act upon the victim. . . . Because the petitioner's entire conduct was one continuous activity in the commission of the act of murder . . . any restraint against the victim was entirely incidental to the murder of the victim. There is simply not one point where it can be said that a jury could clearly determine that the petitioner was guilty of kidnapping because his intended restraint of the victim was for a longer period of time or a greater extent to commit the murder for which he was convicted."

In turn, the respondent, the Commissioner of Correction, argued in his posttrial brief that the intent required by *Salamon* existed because "the petitioner's restraint concluded before he committed the murder." He also claimed that her escape served as a "break in the chain" between the kidnapping and the murder. Additionally, the respondent noted that petitioner intended to prevent the victim from summoning help by restraining her inside the car.

[3] The habeas court first concluded that the holding of *Salamon* was retroactively applicable to the petitioner's claim. See, e.g., *Hinds* v. *Commissioner of Correction*, 321 Conn. 56, 60, 136 A.3d 596 (2016); *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 773, 12 A.3d 817 (2011). It then concluded that the kidnapping in the present case did not fall within the ambit of the rule established in *Salamon* because the movement or restraint of the victim inside the car had independent significance from the murder that occurred outside of the car and after the victim had escaped. The habeas court also noted that the strangulation of the victim prevented her from escaping the attack inside the car. "In other words, the petitioner's restriction of the victim had clearly defined and distinct significance from the subsequent murder. There is, contrary to the petitioner's argument, a point where a reasonable fact finder could clearly determine that the restraint of the victim was not incidental to the murder itself." In the words of the habeas court, the petitioner's claim of one continuous series of criminal activity constituted nothing more than "a proverbial red herring."

[4] The fact that the petitioner was not charged with assault or attempted murder as a result of his conduct in the interior of the car is not dispositive. In *State* v. *Salamon*, supra, 287 Conn. 550–51 n.35, our Supreme Court stated: "As we noted previously, the defendant ultimately was not tried for assault. We nevertheless conclude that a defendant is entitled to an instruction that he cannot be convicted of kidnapping if the restraint imposed on the victim was merely incidental to the assault, regardless of whether the state elects to try the defendant for assault, because the facts reasonably would support an assault conviction. . . . To conclude otherwise would give the state carte blanche to deprive the defendant of the benefit of such an instruction merely by declining to charge him with the underlying crime, which, as in the present case, generally will carry a far less serious maximum possible penalty than the kidnapping charge." (Citations omitted.) See also *Franko* v. *Commissioner of Correction*, 165 Conn. App. 505, 521–22, 139 A.3d 798 (2016).

[5] The habeas court correctly noted that *State* v. *Salamon*, supra, 287 Conn. 509, "and its progeny have never held that the kidnapping statute was invalid and unconstitutional, so that claim has no legal support whatsoever."

[6] In the grounds for certification to appeal, the petitioner set forth the following: "Whether or not the habeas court erred in finding that the petitioner was not entitled to a *Salamon* jury instruction regarding his kidnapping conviction, as to whether or not the facts of his case were incidental to the main charge to warrant a *Salamon* jury instruction . . . ."

[7] This reasoning also applies to the petitioner's claims regarding an uncharged attempt to commit murder.

[8] But see *State* v. *Kitchens*, 299 Conn. 447, 453, 10 A.3d 942 (2011) (state argued on appeal that kidnapping was complete before conduct that led to assault and attempted assault charges; Supreme Court decided case on harmless error grounds).

[9] As succinctly and accurately stated by the habeas court: "The murder took place outside the car. The restraint took place inside the car."