# STATE OF CONNECTICUT *v.* ALAN W. GOLDER
## (AC 31757)

Lavine, Beach and Alvord, Js.

Argued December 13, 2010—officially released March 8, 2011

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Joseph C. Valdes*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Alan W. Golder, appeals from the judgment of conviction, following a jury trial, of two counts of burglary in the second degree in violation of General Statutes § 53a-102 (a), one count of larceny in the first degree in violation of General Statutes § 53a-122 (a) (2) and one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B). On appeal, the defendant claims that (1) the trial court, in its instructions to the jury, misled the jury with respect to the intent required to find him guilty of kidnapping, (2) the evidence was insufficient

to sustain his conviction of kidnapping because the state failed to establish that he had the requisite intent to prevent the victim's liberation, and (3) the evidence was insufficient to sustain his conviction of burglary and larceny because the state failed to establish that he was the individual who committed the offenses. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. In early 1997, the defendant entered into an agreement with Robert Liebman to bring Liebman stolen jewelry. Liebman would then sell the jewelry at wholesale value to a jeweler who was once engaged to Liebman's sister. This agreement continued for four to six months.

Eventually, Liebman agreed to drive the defendant from Queens, New York, to Greenwich in exchange for 50 percent of the money acquired from selling the jewelry stolen during the trip. On September 25, 1997, Liebman and the defendant drove to Greenwich, and Liebman parked the car near a police station and some commercial businesses.

Liebman stayed near the car while the defendant traveled on foot to the home of Sally Lynch and her family, including her daughter, May Lynch Branson. The defendant forcibly entered the Lynch residence through the window of the home's upstairs dressing room. As Branson was walking into her parents' bathroom, from the doorway, she could see the defendant, who was dressed all in black from head to toe, with his arms in her mother's bureau. Branson retreated to her bedroom, and the defendant left with a string of pearls, an engagement ring with a blue sapphire and two diamonds, a Rolex watch, cufflinks and another ring. The defendant then met Liebman at the car where it was originally parked.

On October 28, 1997, Liebman drove the defendant to Greenwich again and parked in the same location as on September 25, 1997. The defendant traveled on foot to the home of Patricia Solari, entering the residence through a first floor window that led into a room next to the master bedroom.

As Solari was walking into her bedroom, the defendant jumped on her, picked her up and asked, "where's the jewelry?" Solari pointed to some fake jewelry, and the defendant responded, "that's not what I want. Where's the real stuff? Where's the safe?" Solari replied that she did not have a safe, and the defendant asked again where she kept her jewelry. Solari mentioned a closet in the kitchen where she had some jewelry in a bag, and the defendant walked her to the kitchen while holding her in a "bear hug . . . ." The defendant released Solari and took the bag of jewelry from the closet.[1] He then told Solari that he was going to have to put her in the basement. Solari told the defendant that she was claustrophobic and asked that he not put her in the basement. She also told the defendant that she had asthma. The defendant decided not to put Solari in the basement and took her to her bedroom and asked if she had any rope. Solari responded that she did not have any, so the defendant took some neckties belonging to Solari's husband and "hog-tied" her to the bed.

The defendant then asked Solari where she kept her car and where the keys for it were located. Solari told him the keys were in her pocketbook, and the defendant went into the kitchen. Solari attempted to release herself from the bed, and the defendant returned to ask Solari if the car had an alarm. When the defendant left for the second time, Solari freed herself and called 911.

[1] The defendant took from the Solari residence, among other things, an enamel pearl and ruby pendant, two women's watches, a pocket watch, a diamond tennis bracelet and three college rings.

Solari was tied to the bed for a total of twenty to twenty-five minutes.

The defendant, visibly upset, returned to the location where Liebman had parked the car. The defendant told Liebman that he had an altercation at the house and that when he was in the house, someone saw him.

The defendant was arrested in connection with several offenses that occurred between November 16, 1996, and October 28, 1997, including the events that occurred at the Lynch and Solari residences. The defendant was charged in an amended information with one count of kidnapping in the first degree in violation of § 53a-92 (a) (2) (B), one count of larceny in the first degree in violation of § 53a-122 (a) (3), four counts of larceny in the first degree in violation of § 53a-122 (a) (2) and four counts of burglary in the second degree in violation of § 53a-102 (a).[2] The defendant's case was tried before a jury with the evidentiary portion of the trial beginning on August 12, 2008.

On August 18, 2008, after the state rested, the defendant moved for a judgment of acquittal on the kidnapping charge.[3] Specifically, counsel for the defendant argued that "through [*State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008), and *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008)],[4] our state is now taking

[2] Concerning the events at the Solari residence, the defendant was charged with larceny for taking Solari's car, not her jewelry. With respect to the events at the Lynch residence, the defendant was charged with larceny for taking the jewelry.

[3] The defendant also filed a motion to dismiss the kidnapping charge on June 30, 2008, arguing that under *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), "where the perpetrator merely restrains the homeowner within the residence for a time period not greater than that necessary to commit the other crime coupled with the clear lack of intent to abduct," there was no probable cause that the defendant committed the kidnapping.

[4] Restraint was necessary for the defendant to commit the offenses in these cases. In *Salamon*, the defendant was convicted of kidnapping in the second degree, unlawful restraint in the first degree and risk of injury to a child for grabbing a fifteen year old female, who was alone in the main

a very, very narrow interpretation of the actual kidnap-
ping statute, and I do not believe that this particular
incident fits into our new definition of kidnapping, nor
what the state has to—the burdens that the state has
to overcome to have a jury reasonably consider it." The
court denied the defendant's motion for a judgment of
acquittal the following day.

At the conclusion of the evidentiary portion of the
trial, the court instructed the jury on the charges against
the defendant, including the charge of kidnapping in
the first degree. The court stated in relevant part: "In
order to find the defendant guilty, the confinement or
movement must be more than part of another substan-
tive crime—here, the burglary—such that the burglary
could have been committed without such acts. It is
whether the confinement, movement or detention was
merely incidental to the accompanying burglary or
whether it was independently significant. A defendant
may be convicted of kidnapping if, at any time prior
to, during or after the commission of that other crime,
the victim is moved or confined in a way that had
independent significance; that is, the victim was
restrained to an extent exceeding that which was neces-
sary to accomplish or complete the other crime—the
burglary."[5] The defendant did not object to these
instructions.

stairwell of a train station, and holding her down and punching her in the
mouth. *State* v. *Salamon,* supra, 287 Conn. 512–15. In *Sanseverino,* the
defendant was convicted of kidnapping in the first degree and sexual assault
in the first degree for grabbing his employee by the shoulders, touching her
breasts and pinning her down while trying to insert his penis into her vagina.
*State* v. *Sanseverino,* supra, 287 Conn. 611–13. Finally, in *DeJesus,* the
defendant was convicted of two counts of sexual assault in the first degree
and two counts of kidnapping in the first degree for forcing an employee
to engage in multiple sexual activities with him on three different occasions
while in different rooms at their place of employment. *State* v. *DeJesus,*
supra, 288 Conn. 422–24.

[5] Additionally, the court provided, in relevant part, the following instruc-
tion: "A person is guilty of kidnapping in the first degree when he abducts
another person and he restrains the person abducted with intent to accom-

On August 20, 2008, the defendant was found guilty of one count of kidnapping, two counts of burglary in the second degree and one count of larceny in the first degree. On October 24, 2008, he was sentenced to a total effective term of fifteen years imprisonment and ten years of special parole. This appeal followed.

I

The defendant first claims that the court, in its instructions to the jury, misled the jury as to the required intent to find him guilty of kidnapping in the first degree. Specifically, the defendant argues that pursuant to *State* v. *Salamon*, supra, 287 Conn. 509, the court should have instructed the jury that to find him guilty of kidnapping in the first degree, it needed to first reach a conclusion

---

plish or advance the commission of a felony. So, for you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt:

"First, the defendant abducted a person. Second, that the defendant unlawfully restrained the person he abducted. And third, that he did so with the intent to accomplish or advance the commission of a felony. So, first, the state must prove, beyond a reasonable doubt, that the defendant abducted a person. As relevant here, the term abduct means to restrain a person with intent to prevent his liberation by using physical force. . . .

"Second, the state must prove, beyond a reasonable doubt, that the defendant unlawfully restrained the person he abducted. The term restrain means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with her liberty by moving her from one place to another or by confining her either in the place where the restriction commences or in a place she has been moved without consent. . . .

"The third and last element for the kidnapping is [that] the state must prove, beyond a reasonable doubt, that the defendant did so with the intent to accomplish or advance the commission of a felony. Here, that felony is the crime of burglary, as I will define that later. . . .

"Now, intent relates to the condition of mind of the person who commits the act; his purpose in doing it. As defined by our statute, a person acts intentionally with respect to a result when his conscious objective is to cause such result. . . . The only way a jury can ordinarily determine what a person's intention was at any given time is by determining what the person's conduct was and what the circumstances were surrounding that conduct, and, from that, infer what his intention was."

that he specifically intended to prevent Solari's liberation for a longer period of time or to a greater degree than that which was necessary to commit another crime *and* that he prevented Solari's liberation with the specific intent to commit a felony. We disagree.

"Our standard of review with regard to claims of instructional error is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [T]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Where . . . the challenged jury [instruction involves] a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict." (Internal quotation marks omitted.) *State* v. *Weaving*, 125 Conn. App. 41, 51–52, 6 A.3d 203 (2010), cert. denied, 299 Conn. 929, 12 A.3d 569 (2011).

"In *Salamon*, our Supreme Court reconsidered its interpretation of Connecticut's kidnapping statutes. . . . Ultimately, the court concluded that [o]ur legislature . . . intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime. . . . The court stated that [the] holding [in *Salamon* was] relatively narrow and

[that it] directly affects only those cases in which the state cannot establish that the restraint involved had independent significance as the predicate conduct for a kidnapping. . . . Additionally, the court stated: [A] defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury. For purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense."[6] (Internal quotation marks omitted.) *State* v. *Strong*, 122 Conn. App. 131, 140–41, 999 A.2d 765, cert. denied, 298 Conn. 907, 3 A.3d 73 (2010).

[6] In *Salamon*, the court reversed the defendant's conviction of kidnapping and remanded the case for a new trial in which "the jury must be instructed that, if it finds that the defendant's restraint of the victim was merely incidental to the defendant's commission of another crime against the victim, that is, assault, then it must find the defendant not guilty of the crime of kidnapping." *State* v. *Salamon*, supra, 287 Conn. 550.

While we do not quarrel with the defendant's interpretation of *Salamon*, his reliance on the holding and its progeny as support for his claim is misplaced. As noted, our Supreme Court limited *Salamon* to cases in which the state cannot establish that the restraint involved had independent criminal significance as the predicate conduct for a kidnapping. Here, the victim was restrained to an extent exceeding that which was necessary to accomplish or to complete the other crime, and restraining Solari was not necessary for the defendant to accomplish any crime.[7] Therefore, the holding of *Salamon* does not control this case.

Section 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to . . . (B) accomplish or advance the commission of a felony . . . ." In its instructions to the jury on the kidnapping charge, the court referred to burglary as the underlying felony for the kidnapping charge. Section 53a-102 (a) provides: "A person is guilty of burglary in the second degree when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein." The defendant, therefore, completed the burglary on October 28, 1997, when he entered the Solari residence with the intent to take Solari's jewelry. After the burglary was completed and after the defendant removed Solari's jewelry from the kitchen closet, *then* the defendant moved Solari from the kitchen to the bedroom and tied her to the bed with her husband's neckties. While this restraint facilitated

---

[7] While the restraint was not necessary for the defendant to accomplish any crime, we acknowledge that it did facilitate the taking of Solari's car and his escape from the Solari residence. Because it was not necessary to the accomplishment of any crime, however, the restraint has its own independent criminal significance.

the defendant's escape, it was not necessary to accomplish the burglary, which already had been completed. We conclude that the restraint that occurred after the defendant took the jewelry from the kitchen closet had its own independent criminal significance.

In his brief, the defendant does not challenge the use of burglary as the underlying offense in connection with the kidnapping charge. During oral argument, however, counsel for the defendant stated that, although the restraint occurred after the jewelry was removed from the kitchen closet, the restraint was necessary for the intruder to take Solari's car, or in other words, to commit larceny.[8] Even if the offense of larceny is used as the underlying felony for the kidnapping charge, however, *Salamon* still does not apply. There is nothing in the record that indicates that Solari was capable of preventing the defendant from taking her car, or intended to prevent the defendant from taking the car. There is also nothing in the record that suggests that, without restraining Solari, the defendant would not have been able to leave with Solari's car. Given that there is no evidence that the defendant needed to restrain Solari so that he could take her car, we conclude that the restraint was not incidental to the taking of the car, nor was it necessary for the defendant to complete the larceny and, therefore, the restraint has its own independent criminal significance.

There is no factual basis in the record to warrant a jury instruction based on *Salamon*. Therefore, we conclude that, in light of the instructions the court provided to the jury on the kidnapping charge, there is no reasonable possibility that the jury was misled in reaching its verdict.

---

[8] At trial, counsel for the defendant referred to the restraint in conjunction with the theft of the car in the motion for a judgment of acquittal. This argument, however, was made outside the presence of the jury.

## II

In his final two claims, the defendant argues that there was insufficient evidence to sustain his conviction of kidnapping, burglary and larceny. "The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *McGee*, 124 Conn. App. 261, 272, 4 A.3d 837, cert. denied, 299 Conn. 911, 10 A.3d 529 (2010).

### A

The defendant claims that there is insufficient evidence to sustain his conviction of kidnapping because the state did not present sufficient evidence for the jury to conclude that he intended to restrain Solari to a greater degree than that which is inherent in the underlying separate offenses.[9] We disagree and conclude that,

[9] For the jury to find the defendant guilty of kidnapping in the first degree, the state had the burden to prove beyond a reasonable doubt that he abducted *and* restrained Solari with the intent to accomplish or advance the commission of a felony. See General Statutes § 53a-92 (a) (2) (B).

given the evidence presented at trial, the jury reasonably could conclude that when the defendant moved Solari from the kitchen to the bedroom and tied her to the bed, he intended to restrain her for a period of time that was longer than what was necessary for him to commit any underlying offenses.

As noted, the defendant committed the burglary when he entered the Solari residence with the intent to take Solari's jewelry. The state presented evidence that the defendant grabbed Solari, moved her from the kitchen to the bedroom and then tied her to the bed after the burglary had been completed. This was sufficient to allow the jury reasonably to conclude that the restraint was not necessary for the defendant to commit the burglary, nor was the restraint inherent in the offense itself. Additionally, if we were to conclude that the taking of Solari's car was the underlying offense for the kidnapping charge, it is apparent that any restraint was not necessary for the defendant to complete the larceny.[10] There is nothing in the record that suggests that the defendant needed to restrain Solari to take her car. Viewing the evidence in a light most favorable to sustaining the conviction, the jury reasonably could have concluded that the defendant restrained Solari not to take the car but to prevent her from notifying the police, and, therefore, to facilitate his escape.

Although the defendant was not charged with robbery in the amended information, the defendant claims that the restraint of Solari was part of the course of conduct needed to complete the crime of robbery. This argument, however, is unavailing. General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens

---

[10] There is no specific underlying offense listed in the amended information with respect to the kidnapping charge. The court, however, did instruct the jury that the underlying offense was burglary.

the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." The defendant initially restrained Solari so that she would provide him with the location of her jewelry. The state presented evidence that, after obtaining the jewelry from the kitchen closet, the defendant continued to restrain Solari. The jury could have reasonably concluded that this additional restraint was not necessary to complete the robbery because, as with the burglary, the offense had been completed at the point when the defendant moved Solari to the bedroom and tied her to the bed.

## B

Finally, the defendant claims that the evidence was insufficient to support his conviction of burglary and larceny in relation to the events at the Lynch residence and his conviction of burglary in relation to the events at the Solari residence. Specifically, the defendant argues that the state failed to prove that he was the individual who committed the offenses at these two locations. Again, we disagree.

The state presented evidence that the defendant was athletic, weighed approximately 175 to 180 pounds, was of medium build and between five feet, eleven inches, and six feet tall. It further provided testimony from Liebman that both times he drove the defendant to Greenwich, the defendant dressed in all black, like a "ninja." Additionally, the state presented evidence that the defendant told Liebman that he liked to "work" between 5 and 7 p.m. during dinnertime so that people were downstairs eating while he entered the home.

With respect to the events at the Lynch residence, Branson testified that she saw a man dressed all in black in her home on the night of September 25, 1997, and that the intruder was five feet, ten inches tall and of average build. The jewelry stolen from the Lynch residence included a string of pearls and a blue sapphire engagement ring with two diamonds. Liebman testified that the defendant showed him, among other things, a long pearl necklace and an antique sapphire ring with diamond baguettes on each side after they returned to Queens from their first trip to Greenwich. Liebman also parked about one and one-half miles from the Lynch residence during the first trip to Greenwich, and the defendant was gone from his presence between one and two hours.

As to the events at the Solari residence, Solari testified that the intruder was very athletic and very strong and that he was dressed like a "ninja." She also testified that the intruder took an enamel pearl and ruby pendant and pocket watch. After their second trip to Greenwich, Liebman testified, the defendant gave him a gold pocket watch and a ruby pendant necklace.

Finally, Liebman testified that while he was watching television with the defendant, a news program had a story about a burglar called the "dinnertime bandit" who was stealing from houses in Connecticut. The defendant stated, in response to this story, that the program was referring to him and that he was going to go on the "run."

The defendant claims that this evidence is insufficient to sustain his conviction because the jury needed to draw several impermissible inferences to find him guilty of larceny and burglary.[11] We note that "it does not

---

[11] The defendant also suggests that Liebman is not a credible witness because, at the time of his testimony, he had violated his New York parole and was participating in a substance abuse program. He also suggests that Liebman's statements to the police were inconsistent. This court has concluded that "[e]vidence is not insufficient . . . because it is conflicting or

diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Nazarian*, 125 Conn. App. 489, 495–96, 8 A.3d 562 (2010). While jurors may draw inferences from the evidence presented at trial, they may not speculate to reach a conclusion of guilt. *State* v. *Williams*, 16 Conn. App. 75, 79, 546 A.2d 943 (1988). We conclude that the evidence presented by the state was sufficient for the jury reasonably to conclude, without resorting to speculation, that the defendant was the individual who committed the offenses at the Solari and Lynch residences.

The judgment is affirmed.

In this opinion the other judges concurred.

---

inconsistent. [The jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Weisenberg*, 79 Conn. App. 657, 663–64, 830 A.2d 795, cert. denied, 266 Conn. 932, 837 A.2d 806 (2003).