******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PHILLIP WHITE III *v.* COMMISSIONER
OF CORRECTION
(AC 38453)

Alvord, Prescott and Mihalakos, Js.

*Argued October 18, 2016—officially released January 31, 2017*

(Appeal from Superior Court, judicial district of
Tolland, Oliver, J.)

*Bruce R. Lockwood*, senior assistant state's attorney,

with whom, on the brief, were *John C. Smriga*, state's attorney, *Susann E. Gill*, former supervisory assistant state's attorney, *Craig P. Nowak*, senior assistant state's attorney, and *Yamini Menon*, special deputy assistant state's attorney, for the appellant (respondent).

*Wade Luckett*, assigned counsel, with whom, on the brief, was *Walter C. Bansley IV*, assigned counsel, for the appellee (petitioner).

*Opinion*

PRESCOTT, J. The respondent, the Commissioner of Correction, appeals from the summary judgment rendered by the habeas court in favor of the petitioner, Phillip White III, granting his amended petition for a writ of habeas corpus.[1] On appeal, the respondent claims that the habeas court improperly granted the petition after concluding that the jury in the petitioner's underlying criminal case should have been instructed on the intent and conduct necessary to find the petitioner guilty of kidnapping in accordance with *State* v. *Salamon*, 287 Conn. 509, 550, 949 A.2d 1092 (2008). Having thoroughly reviewed the record, we conclude that the habeas court properly granted the amended petition for a writ of habeas corpus, and, accordingly, we affirm the judgment.

The following facts, as set forth by this court in the petitioner's direct criminal appeal, and procedural history are relevant to this appeal. "On June 24, 2003, the [teenage] complainant was alone inside her parents' home in the town of Fairfield. At approximately 4 p.m., the [petitioner] approached the front door and rang the doorbell. The complainant answered the door, and the [petitioner] informed her that he was selling magazine subscriptions to earn money for college. The [petitioner] asked the complainant to look at a brochure to determine if she was interested in purchasing any of the magazines. The complainant informed the [petitioner] that she could not purchase anything because her parents were not home. She recommended that he return sometime around 6 p.m. when her parents would be home from work.

"The [petitioner] asked the complainant if he could use the bathroom. The complainant hesitated. The [petitioner] explained that he really had to use the bathroom. Without invitation, the [petitioner] brushed by the complainant, who was standing in the doorway, and walked straight down the hallway of the foyer toward the bathroom located off the kitchen. The [petitioner] remained in the bathroom for approximately thirty seconds. When he emerged from the bathroom, the [petitioner] walked slowly toward the complainant. While the [petitioner] was in the bathroom, the complainant did not hear the bathroom door shut or the water running from the bathroom plumbing. The complainant remained near the front doorway while the [petitioner] was in the bathroom.

"The [petitioner], again, asked the complainant to look at the magazine brochure. The complainant briefly looked at the brochure, handed it back to the [petitioner] and told him that she had not heard of any of the magazines on the list. The [petitioner] took the brochure, walked toward the [front] door and closed [it]. Placing his hand in the rear pocket of his trousers,

the [petitioner] told the complainant that he had a gun and ordered her to sit on a couch in the den adjacent to the foyer. The complainant entered the den and sat on the couch closest to the foyer. The [petitioner] asked her what time her parents would arrive home. Though the complainant had told him earlier that her parents would be home at approximately 6 p.m., this time she told the [petitioner] that they would arrive at approximately 5:30 p.m., hoping that he would believe that her parents would arrive sooner. The [petitioner] then asked if anyone else was home, and she told him that no one else was home at the time.

"After approximately three minutes, the [petitioner] told the complainant to stand up because he wanted to go upstairs. Walking sideways facing the complainant, the [petitioner] slowly approached the stairwell just off the den. After taking several slow steps, the [petitioner] placed his hand on the complainant's elbow to hurry her along. As the [petitioner] touched the complainant's arm, she began to scream and cry. The [petitioner] told the complainant to be quiet, and she attempted to leave the house via the front door. The [petitioner] blocked the doorway, as the complainant continued to scream. The [petitioner] suddenly stopped and said that he was just playing. The [petitioner] then called the complainant a 'scaredy-ass,' opened the front door and ran out of the house. Approximately ten minutes elapsed from the time the [petitioner] first arrived at the home to the time that he departed.

"The complainant closed the door and locked it. She immediately called a friend, who lived up the street, to warn her that the [petitioner] was running in her direction. She was unable to contact her friend. The complainant then unsuccessfully called both of her parents. Finally, she reached her boyfriend by telephone and told him what had happened. She then called the police and gave a brief description of the [petitioner].

"Within approximately ten minutes, Officer Joseph Kalson of the Fairfield police department arrived at the home. The complainant again gave a description of the [petitioner], and Kalson broadcast over the police radio that the original description was correct. Officer Christopher Ioli of the Fairfield police department also responded to the call. Ioli observed the [petitioner] jogging on a street. By the time that Ioli had turned his vehicle around and turned down that street, the [petitioner] was sitting on the front lawn of a house. According to Ioli, the [petitioner] was sweating and appeared slightly nervous. Ioli conducted a patdown search for weapons but found none. The complainant was transported to that location, where she identified the [petitioner], and the [petitioner] was taken into custody." *State* v. *White*, 97 Conn. App. 763, 766–68, 906 A.2d 728, cert. denied, 280 Conn. 939, 912 A.2d 476 (2006).

Following a jury trial, the petitioner was convicted of kidnapping in the second degree with a firearm in violation of General Statutes § 53a-94a (a)[2] and burglary in the second degree with a firearm in violation of General Statutes § 53a-102a (a).[3] He was sentenced by the trial court to fifteen years incarceration on the kidnapping charge and ten years incarceration on the burglary charge, both sentences to run concurrently, for a total effective sentence of fifteen years. On direct appeal, this court affirmed the petitioner's kidnapping conviction, but reversed the petitioner's burglary conviction on the ground that the trial court improperly declined to instruct the jury on the lesser included offense of criminal trespass in the second degree. *State* v. *White*, supra, 97 Conn. App. 765. After this court remanded the case for a new trial on the burglary charge, the state, on January 25, 2007, nolled that charge.

The petitioner subsequently filed his first habeas action, in which he alleged ineffective assistance of counsel. After a trial, the habeas court denied in part and granted in part the petition for a writ of habeas corpus, restoring the petitioner's right to sentence review. *White* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-04-4000100-S (October 15, 2007). On appeal, this court affirmed that judgment of the habeas court. *White* v. *Commissioner of Correction*, 113 Conn. App. 901, 964 A.2d 1261, cert. denied, 293 Conn. 904, 976 A.2d 705 (2009). After the petitioner applied for sentence review, his sentence was affirmed. *State* v. *White*, Superior Court, judicial district of Fairfield, Docket No. CR-03-190578-T (February 2, 2009).

On January 5, 2015, in a second habeas action, the petitioner filed an amended petition, alleging a violation of his due process rights under our federal and state constitutions in light of our Supreme Court's decisions in *State* v. *Salamon*, supra, 287 Conn. 509, and *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 12 A.3d 817 (2011). The petitioner claimed that the trial court did not properly instruct the jury as to the charge of kidnapping because, pursuant to *Salamon*, a defendant cannot be convicted of kidnapping in conjunction with another crime if the confinement or movement necessary to support the kidnapping charge is merely incidental to the commission of the other crime.[4] *State* v. *Salamon*, supra, 546–47.

On February 5, 2015, the petitioner filed a motion for summary judgment on his amended petition pursuant to Practice Book § 23-37,[5] which was accompanied by a memorandum of law in support. On March 9, 2014, the respondent filed an objection to the motion. Oral argument on the motion was heard on June 1, 2015, and both sides stipulated to the habeas court treating the June 1 argument as a full habeas trial on the papers.[6]

Thereafter, the habeas court granted the petitioner's motion for summary judgment and, in turn, his amended petition for a writ of habeas corpus. In its memorandum of decision dated September 10, 2015, the court summarily concluded that the petitioner was entitled to an instruction on the kidnapping charge in a manner that comports with *Salamon*, and, in a more lengthy analysis, concluded that the lack of the proper instruction was not harmless error. The habeas court subsequently granted the respondent's petition for certification to appeal, and this appeal followed.

The respondent claims that the habeas court improperly concluded that the petitioner was entitled to an incidental restraint instruction on the kidnapping charge in accordance with *Salamon*. The respondent then argues that, even if an incidental restraint instruction should have been given, the habeas court improperly concluded that the trial court's failure to give the instruction was harmful error. We disagree.

As an initial matter, we set forth the applicable standard of review and principles of law. "Practice Book § 23-37 provides in relevant part that a habeas court may grant summary judgment if the pleadings, affidavits and any other evidence submitted show that there is no genuine issue of material fact between the parties requiring a trial and the moving party is entitled to judgment as a matter of law. On review from the granting of a motion for summary judgment, our task is to determine whether the court correctly determined that the moving party was entitled, as a matter of law, to summary judgment on the basis of the absence of any genuine issues of material fact requiring a trial. Because this inquiry requires a legal determination, our review is plenary." (Internal quotation marks omitted.) *Eric M.* v. *Commissioner of Correction*, 153 Conn. App. 837, 842–43, 108 A.3d 1128 (2014), cert. denied, 315 Conn. 915, 106 A.3d 308 (2015).

"In *Salamon*, [our Supreme Court] reconsidered our long-standing interpretation of our kidnapping statutes, General Statutes §§ 53a-91 through 53a-94a. . . . The defendant [in *Salamon*] had assaulted the victim at a train station late at night, and ultimately was charged with kidnapping in the second degree in violation of § 53a-94, unlawful restraint in the first degree, and risk of injury to a child. . . . At trial, the defendant requested a jury instruction that, if the jury found that the restraint had been incidental to the assault, then the jury must acquit the defendant of the charge of kidnapping. . . . The trial court declined to give that instruction. . . .

"[Our Supreme Court thus] reexamined our long-standing interpretation of the kidnapping statutes to encompass even restraints that merely were incidental to and necessary for the commission of another sub-

stantive offense, such as robbery or sexual assault. . . . [Our Supreme Court] ultimately concluded that [o]ur legislature . . . intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Hampton*, 293 Conn. 435, 459–60, 988 A.2d 167 (2009).

The court in *Salamon* explained that "a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that had independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury." (Emphasis omitted; footnote omitted.) *State* v. *Salamon*, supra, 287 Conn. 547–48.

At the close of evidence in the petitioner's underlying criminal case, and in accordance with our pre-*Salamon* case law, the trial court instructed the jury in relevant part: "A person is guilty of kidnapping in the second degree with a firearm when he commits kidnapping in the second degree and in the commission of such offense he represents by his words and conduct that he possesses a firearm. A person is guilty of kidnapping in the second degree when he abducts another person. . . . Abduct means to restrain a person with intent to prevent her liberty by either secreting or by hiding her in a place where she is not likely to be found or by using or threatening to use physical force or intimidation. Restrain means to restrict a person's movement intentionally or unlawfully in such a manner as to interfere substantially with her liberty by moving her from one place to another or by confining her either in the place where the restriction commences or to a place to which she has been moved without consent. . . . There is no special requirement that the restraint be for any particular length of time or that the victim be moved over any particular distance." No instruction setting forth the principle of incidental restraint, namely, an instruction designed to ensure that the defendant could be convicted of kidnapping only if the restraint that

formed the basis of the kidnapping charge had criminal significance separate and apart from that necessarily used in connection with the burglary offense, was given to the jury.[7]

In this appeal, the respondent claims in his brief, and asserted at oral argument, that the habeas court improperly concluded that a *Salamon* incidental restraint instruction was required under the particular facts of this case. In doing so, the respondent relies upon *State* v. *Golder*, 127 Conn. App. 181, 14 A.3d 399, cert. denied, 301 Conn. 912, 19 A.3d 180 (2011), a case in which this court held that the evidence did not warrant a *Salamon* instruction on the kidnapping charge because the restraint used by the defendant was not necessary or incidental to the other charged offense of burglary. Id., 190–91. We are not persuaded by this argument for two reasons.

First, in *State* v. *Fields*, 302 Conn. 236, 24 A.3d 1243 (2011), our Supreme Court indicated that whenever kidnapping and another substantive offense are charged, a *Salamon* instruction ordinarily must be given. Id., 247; see also *State* v. *Hampton*, supra, 293 Conn. 462 (implicitly accepting defendant's argument that *Salamon* instruction required when defendant is charged with both kidnapping and offense separate from kidnapping). Thus, because the petitioner here was charged with both kidnapping as well as the substantive offense of burglary, *Fields* instructs us to conclude that the *Salamon* instruction should have been given automatically to the jury. We note that this court in *Golder* did not have the guidance of our Supreme Court's decision in *Fields* because *Fields* was decided approximately five months *after* we officially released our decision in *Golder*. See *State* v. *Fields*, supra, 237 (officially released August 30, 2011); *State* v. *Golder*, supra, 127 Conn. App. 181 (officially released March 8, 2011).

Second, *Golder* is distinguishable from the present case on its facts. In *Golder*, the defendant entered the victim's residence with the intent to steal her jewelry. *State* v. *Golder*, supra, 127 Conn. App. 183–84. Upon unexpectedly encountering the victim inside the residence as she walked toward her bedroom, the defendant grabbed her, moved her to the kitchen while holding her in a " 'bear hug,' " released her, and took a bag of jewelry from the closet. Id., 184. At that point, the defendant told the victim that he was going to have to put her in the basement, but changed his mind and moved her instead to the bedroom after the victim told him she was claustrophobic and asthmatic. Id. The defendant then "asked if she had any rope. [The victim] responded that she did not have any, so the defendant took some neckties belonging to [the victim's] husband and 'hog-tied' her to the bed. The defendant then asked [the victim] where she kept her car and where the keys for it were located. [The victim] told him the keys were

in her pocketbook, and the defendant went into the kitchen. [The victim] attempted to release herself from the bed, and the defendant returned to ask [the victim] if the car had an alarm. When the defendant left for the second time, [the victim] freed herself and called 911. [The victim] was tied to the bed for a total of twenty to twenty-five minutes." Id., 184–85.

In *Golder*, the nature and duration of the victim's movement and confinement that occurred *after* the defendant stole the jewelry from the kitchen closet is far more significant than that which occurred in the case at hand. The victim in *Golder* was physically moved between several different rooms in the house, and ultimately was forced to have all of her limbs bound and tied to the bed while the defendant escaped the residence, leaving her to her own fate. In contrast, the complainant in the instant case was only briefly, and not aggressively, physically touched by the petitioner, and was ordered to sit on a couch for a brief period of time. Moreover, the total length of time that the victim in *Golder* was hog-tied to the bed, which does not even account for the length of time beforehand that the defendant spent moving her around the residence and stealing her jewelry, was more than twice the length of time that the petitioner in the present case spent inside the complainant's residence from start to finish. Accordingly, it is much less clear here, as opposed to the facts in *Golder*, that the restraint used by the petitioner had its own "independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the [burglary]." *State* v. *Salamon*, supra, 287 Conn. 547. For all of these reasons, we conclude that the habeas court properly concluded that the petitioner was entitled to a *Salamon* incidental restraint instruction on the kidnapping charge.

Having decided that the habeas court properly determined that the petitioner was entitled to a jury instruction on incidental restraint, we next turn to whether the failure to give such an instruction was harmful. "In [*Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 770], the court indicated that the proper standard to [assess whether the omission of a *Salamon* instruction requires reversal of the petitioner's kidnapping conviction] would be the harmless error standard applied on direct appeal. . . . On direct appeal, [i]t is well established that a defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. . . . [T]he test for determining whether a constitutional error is harmless . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.[8] . . . A jury instruction that improperly omits an essential element from the charge constitutes harmless error [*only*] *if* a reviewing court

concludes *beyond a reasonable doubt* that the omitted element was *uncontested* and *supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error. . . . The failure to charge in accordance with *Salamon* is viewed as an omission of an essential element . . . and thus gives rise to constitutional error. . . . [T]his standard imposes the burden of persuasion exclusively on the state . . . ." (Citations omitted; emphasis altered; footnote added; internal quotation marks omitted.) *Hinds* v. *Commissioner of Correction*, 321 Conn. 56, 77–78, 136 A.3d 596 (2016).

*Salamon* makes clear that if the evidence regarding the perpetrator's intent—that is, whether he or she intended "to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime"—is susceptible to more than one interpretation, that question is one for the jury. *State* v. *Salamon*, supra, 287 Conn. 542. As previously mentioned, "[a] defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. . . . For purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." (Footnote omitted.) Id., 547–48.

On the basis of our review of the record in the present case, we conclude that the improper instruction was not harmless, because the respondent has failed to persuade us beyond a reasonable doubt that the omission of an instruction on incidental restraint did not contribute to the verdict. In doing so, we consider the various relevant factors set forth in *Salamon*.[9]

With regard to the first relevant factor, the respondent argues that the petitioner's confinement and movement of the complainant was *not* de minimus. The petitioner disagrees with the respondent's contention, citing that the confinement lasted only a matter of

minutes and that any movement took place over a short distance. We agree with the petitioner that this factor weighs in his favor.

We first note that in *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 92–93, our Supreme Court attempted to categorize various *Salamon* incidental restraint cases with differing degrees of confinement or movement: "Although no minimum period of restraint or degree of movement is necessary for the crime of kidnapping, an important facet of cases where the trial court has failed to give a *Salamon* instruction and that impropriety on appellate review has been deemed harmless error is that longer periods of restraint or greater degrees of movement demarcate separate offenses. See *State* v. *Hampton*, supra, 293 Conn. 463–64 (defendant confined victim in a car and drove her around for approximately three hours before committing sexual assault and attempted murder); *State* v. *Jordan*, [129 Conn. App. 215, 222–23, 19 A.3d 241 (2011)] (evidence showed the defendant restrained the victims to a greater degree than necessary to commit the assaults even though assaultive behavior spanned entire forty-five-minute duration of victims' confinement) [cert. denied, 302 Conn. 910, 23 A.3d 1248 (2011)]; *State* v. *Strong*, [122 Conn. App. 131, 143, 999 A.2d 765] (defendant's prolonged restraint of victim while driving for more than one hour from one town to another not merely incidental to threats made prior to the restraint) [cert. denied, 298 Conn. 907, 3 A.3d 73 (2010)]; and *State* v. *Nelson*, [118 Conn. App. 831, 860–62, 986 A.2d 311] (harmless error when defendant completed assault and then for several hours drove victim to several locations) [cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010)]. Thus, as these cases demonstrate, multiple offenses are more readily distinguishable—and, consequently, more likely to render the absence of a *Salamon* instruction harmless—when the offenses are separated by greater time spans, or by more movement or restriction of movement.

"Conversely, multiple offenses occurring in a much shorter or more compressed time span make the same determination more difficult and, therefore, more likely to necessitate submission to a jury for it to make its factual determinations regarding whether the restraint is merely incidental to another, separate crime. In those scenarios, [in which] kidnapping and multiple offenses occur closer in time to one another, it becomes more difficult to distinguish the confinement or restraint associated with the kidnapping from another substantive crime. The failure to give a proper *Salamon* instruction in those scenarios is more likely to result in harmful error precisely because of the difficulty in determining whether each crime has independent criminal significance. See *State* v. *Thompson*, [118 Conn. App. 140, 162, 983 A.2d 20 (2009)] (within fifteen minutes defendant entered victim's car, pushed her behind a building and

sexually assaulted her) [cert. denied, 294 Conn. 932, 986 A.2d 1057 (2010)]; *State* v. *Flores*, [301 Conn. 77, 89, 17 A.3d 1025 (2011)] (defendant's robbery of victim in her bedroom lasted between five and twenty minutes); *State* v. *Gary* [120 Conn. App. 592, 611, 992 A.2d 1178] (defendant convicted of multiple sexual assaults and an attempted sexual assault that were in close temporal proximity to the defendant's restraint of the victim; thus court determined evidence reasonably supports a finding that the restraint merely was incidental to the commission of other crimes, namely, sexual assaults and attempted sexual assault; lack of *Salamon* instruction harmful error) [cert. denied, 297 Conn. 910, 995 A.2d 637 (2010)]." (Internal quotation marks omitted.)

The instant case resembles the latter line of cases, rather than the former, in that the burglary was committed in close temporal proximity to the alleged kidnapping and any confinement/movement was limited in nature and distance. The complainant's encounter with the petitioner in this case, from the time he first appeared at her front door until the time he ran out of the residence, lasted about ten minutes. As for the nature of the restraint, the complainant testified that she was confined to the couch for approximately three minutes after the petitioner indicated he had a gun and ordered her to sit, and that the only physical contact between her and the petitioner occurred when he briefly, and without much force, touched her elbow in an effort to "hurry [her] along upstairs." At that point, the complainant began crying and screaming, and the contact stopped. Moreover, the events took place in a single location—the complainant's residence—and the distance over which the complainant testified she was ordered by the petitioner to move consisted of mere feet.[10] Given that the two offenses were not separated by a significant time span or by much movement, it is difficult for us to conclude that the jury would have necessarily made the factual determination that the restraint involved in the alleged kidnapping was not merely incidental or de minimus to the separate crime of burglary.

We next address the second relevant *Salamon* factor, that is, whether the movement or confinement occurred during the commission of the separate offense. The respondent argues that the absence of a *Salamon* instruction did not contribute to the kidnapping verdict here because the burglary had been completed prior to the petitioner's conduct comprising the kidnapping. More specifically, he argues that the offense of second degree burglary was completed "once there [was] an unlawful entering or remaining in a building with the intent to commit a crime [therein]"; (internal quotation marks omitted) *State* v. *Ayala*, 133 Conn. App. 514, 522, 36 A.3d 274, cert. denied, 304 Conn. 913, 40 A.3d 318 (2012); and "the petitioner gestured to his back pocket

and told the [complainant] he had a gun." Therefore, he argues, any additional action the petitioner took *after* he represented by his words or conduct that he possessed a firearm—e.g., ordering the complainant to sit on the couch, instructing her to move upstairs, touching her elbow in an attempt to get her to move faster—was not necessary to accomplish the already concluded offense of burglary. We do not find this unduly legalistic line of reasoning persuasive.

The respondent's syllogism fails to recognize that the jury could have viewed the petitioner's actions here as a continuous, uninterrupted course of conduct all relating to the burglary offense. See *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 79 (holding failure to give *Salamon* instruction harmful when petitioner's actions were "a continuous, uninterrupted course of conduct"). As this court recently emphasized in a related context, "although liability for a burglary premised on an unlawful entry attaches upon a defendant crossing the threshold; see *State* v. *Little*, [194 Conn. 665, 675, 485 A.2d 913 (1984)] . . . ; authority exists that a burglary, once begun, *continues until all parties participating in the burglary have left* the property. See 12A C.J.S. 207, Burglary § 55 (2014) ('burglary does not end when a burglar enters the premises, but continues for as long as the burglar is on the premises with the intent to commit the crime'), citing *Flanders* v. *Meachum*, 13 F.3d 600, 603 (2d Cir. 1994) (applying Connecticut law); see also 12A C.J.S., supra, p. 138 (liability of aider or abetter 'is consider[ed] ongoing during the time that the perpetrator remains inside the structure'); 40 C.J.S. 481, Homicide § 62 (2014) ('[a] burglary is deemed to be in progress, for purposes of a felony-murder charge, while the burglar is on the premises')." (Emphasis altered.) *State* v. *Johnson*, 165 Conn. App. 255, 293, 138 A.3d 1108, cert. denied, 322 Conn. 904, 138 A.3d 933 (2016).[11]

In the instant case, although the respondent's argument regarding the point in time at which all the elements for burglary were satisfied and thus criminal liability attached may technically be true,[12] the jury could have deemed the burglary to be in progress for the entirety of the ten minutes in which he was at the residence because he *remained* on the premises with the intent to commit a crime. See id. This is especially true under the facts of this case because the underlying crime that formed the basis of the petitioner's intent for his burglary charge was never completed,[13] and, thus, the jury reasonably could have found that his intent to "commit a crime therein" was ongoing up until the point at which he abruptly left the residence. In fact, the state implied as much during closing arguments, stating: "[T]o determine his intention *at the time that he remained* in the home, look at his actions. Look at the [petitioner] ordering [the complainant] into the den. Look at his statement to her, 'Be quiet or I'll shoot.'

Look at his statement, 'I want to go upstairs now.' Look at his actions in taking her by the elbow and leading her toward the stairs. And that is how, ladies and gentlemen, you determine someone's intent." (Emphasis added.) Accordingly, we are unable to conclude that, had the jury been instructed properly, it would have made the factual determination that the petitioner's actions in confining or moving the complainant did not occur during the commission of the burglary.

With regard to the third relevant *Salamon* factor, namely, whether the restraint was inherent in the nature of the separate offense, the respondent argues that the petitioner actually utilized no restraint in the course of committing the burglary. In response, the petitioner argues that the jury *could* have found that restraint was inherent in the nature of the burglary here. We, again, agree with the petitioner that this factor weighs in his favor.

In *State* v. *Fields*, supra, 302 Conn. 236, 247–48, in which the defendant was charged in relevant part with kidnapping and assault, our Supreme Court expressly rejected the notion that the rationale of *Salamon* is not implicated merely because restraint of the victim is not an essential element of the other substantive offense charged along with kidnapping. Our Supreme Court stated: "On the contrary, restraint may be used in the commission of the [other substantive] offense . . . even though it is not an element of that offense. Thus, depending on the facts of the [other substantive] crime, the fact finder reasonably might conclude that the kidnapping was merely incidental to the [other substantive] crime irrespective of whether that crime [inherently] requires the use of restraint. . . . Although it is true, of course, that not every assault involves an appreciable restraint of the victim, many do, and, in those circumstances, we see no reason why a defendant should be denied the benefit of a *Salamon* instruction simply because the state is not required to prove restraint of the victim as an element of the assault." (Citations omitted.) Id., 248–49.

Because restraint is not an essential element of burglary in the second degree with a firearm; see General Statutes §§ 53a-102a (a) and 53a-102 (a); the relevant question becomes whether restraint was inherent in the nature of the burglary in this particular case. As previously mentioned, the crime underlying the charge of burglary was never identified at trial,[14] much less ever completed by the petitioner. Because it is not clear what underlying crime the petitioner intended to commit when he unlawfully entered the house, the jury conceivably could have interpreted the petitioner's confinement and movement of the complainant in several different ways. For instance, the jury may have viewed the petitioner's attempt to have the complainant go upstairs with him as an indication that he wanted to

sexually assault her, or as an indication that he wanted to rob her of jewelry.[15] The jury could have concluded that either of these underlying offenses inherently involved restraint by virtue of its nature. In short, without knowing the jury's specific theory of the case on which it convicted the petitioner of burglary, we have no way of determining whether the jury would have found that the restraint used here was inherent in the crime underlying the burglary.

With regard to the remaining *Salamon* factors, the respondent argues that the restraint utilized by the petitioner here prevented the complainant from summoning assistance, reduced the petitioner's risk of detection, and created a significant danger or increased the complainant's risk of harm independent of that posed by the separate offense. As to the final factor, that is, whether the restraint created a significant danger or increased the complainant's risk of harm independent of that posed by the separate offense, it does not appear likely that the jury could conclude that the restraint here was especially dangerous, as the restraint was generally not physical or aggressive in nature, there was no proof the petitioner actually possessed a gun, the restraint did not persist for a long period of time, and the restraint took place in a single location—the complainant's own home. On the other hand, assuming that the jury credited the entirety of the complainant's trial testimony, we agree with the respondent that the additional two factors—whether the restraint utilized by the petitioner prevented the complainant from summoning assistance and reduced the petitioner's risk of detection—do not weigh in the petitioner's favor, given that the complainant "attempt[ed] to go toward the front door to get away" but was unable to escape because the petitioner had blocked the exit. To the extent that these cut in favor of the respondent, however, they do not trump the significance of the remaining factors that weigh in favor of the petitioner.

In light of all of these considerations, we cannot conclude "beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Internal quotation marks omitted.) *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 79. In other words, a properly instructed jury reasonably could conclude that the petitioner's intention in confining and moving the complainant was merely in furtherance of his commission of the crime of burglary. Under the deficient instruction, however, the jury effectively was compelled to conclude that the petitioner committed kidnapping once it credited the complainant's account. Ultimately, the respondent has not proven that the omission of the *Salamon* instruction was harmless beyond a reasonable doubt. See id., 77–78. Accordingly, the petitioner is entitled to relief under our established harmless error

standard.[16]

Finally, we acknowledge that the habeas court, in fashioning a remedy, ordered that the burglary charge against the petitioner be reinstated. Because a nolle on the burglary charge was previously entered by the state nearly ten years ago, this raises significant double jeopardy concerns on remand.[17] Those concerns, however, are beyond the scope of the present appeal. We, therefore, leave resolution of that issue to further proceedings in the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The habeas court granted the respondent's petition for certification to appeal from the judgment.

[2] General Statutes § 53a-94a (a) provides in relevant part: "A person is guilty of kidnapping in the second degree with a firearm when he commits kidnapping in the second degree, as provided in section 53a-94, and in the commission of such offense he uses or is armed with and threatens the use of or uses or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm. . . ." In turn, General Statutes § 53a-94 provides in relevant part: "(a) A person is guilty of kidnapping in the second degree when he abducts another person. . . ."

[3] General Statutes § 53a-102a (a) provides in relevant part: "A person is guilty of burglary in the second degree with a firearm when he commits burglary in the second degree as provided in section 53a-102, and in the commission of such offense he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, rifle, shotgun, machine gun or other firearm. . . ." In turn, General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein."

[4] Our Supreme Court in *Luurtsema* held that the rule announced in *Salamon* retroactively applied to collateral attacks on final judgments. See *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 773. Because the petitioner in the instant case was convicted of kidnapping in 2004, and the *Salamon* decision was not released until 2008, the rule would have to be applied retroactively in this case.

[5] Practice Book § 23-37 provides: "At any time after the pleadings are closed, any party may move for summary judgment, which shall be rendered if the pleadings, affidavits and any other evidence submitted show that there is no genuine issue of material fact between the parties requiring a trial and the moving party is entitled to judgment as a matter of law."

[6] The parties also agreed to stipulate to, and admit as full exhibits, the criminal trial transcripts dated January 12 and 13, 2004, from the petitioner's underlying criminal case.

[7] Moreover, during closing arguments, the prosecutor did not attempt to clearly distinguish for the jury the timing of all the acts comprising the offense of burglary from the timing of all the acts comprising the offense of kidnapping, stating: "There is no time requirement under the law, and His Honor will so instruct you. The length of time does not lessen the trauma of these events to [the complainant]. Use your common sense. When you are held at gunpoint, presumably gunpoint, for one minute or twenty minutes, it doesn't erase the fact of the crime. There is no time element."

[8] Although the respondent recognizes that this court is bound by this standard in determining the present claim; see *Hinds* v. *Commissioner of Correction*, 321 Conn. 56, 77–78, 136 A.3d 596 (2016); the respondent disagrees with the application of the "harmless beyond a reasonable doubt" standard on collateral review, and expressly preserves an objection to this standard in such cases. We recognize that our Supreme Court recently granted certification to appeal in *Epps* v. *Commissioner of Correction*, 153 Conn. App. 729, 104 A.3d 760 (2014), cert. granted, 323 Conn. 901,     A.3d

(2016), limited, in part, to determining the proper harmless error standard in a claim regarding the failure of the trial court to provide a *Salamon* incidental restraint instruction. At present, however, we are bound to apply the "harmless beyond a reasonable doubt" standard in accordance with

Supreme Court precedent. See *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010) ("it is manifest to our hierarchical judicial system that [our Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court . . . [is] bound by [its] precedent").

[9] Although we recognize that the factors enumerated in *Salamon* are not intended to constitute an exhaustive list of the possible factors that may be relevant in a given case, the parties have not identified any other factors relevant to the present case, and, thus, we limit our discussion to those factors expressly identified in *Salamon*.

[10] Specifically, during her direct examination, the following exchange took place between the complainant and the prosecutor:

"Q. What happened after that time . . . ?

"A. He asked me to stand up because he wanted to go upstairs.

"Q. Okay. And did you stand up?

"A. Yes. . . .

"Q. Did you move toward the upstairs?

"A. Yes, yeah, slowly. . . .

"Q. And do you recall approximately how many steps you took?

"A. About four. . . .

"Q. . . . And where—how far did you get toward the upstairs?

"A. Not far at all. I didn't take a step upstairs.

"Q. And did the [petitioner] at all take any steps toward the upstairs?

"A. Yes.

"Q. How many, if you know?

"A. One."

[11] Although the respondent attempts to distinguish *Johnson* from the present case solely on the basis of the fact that the present case does not involve a felony murder charge, we see no reason why this principle should not also apply to the facts at hand. In the case of felony murder, an issue for the factfinder to determine is whether the murder occurred immediately before or during the commission of the predicate felony, and in the case of incidental restraint, an issue for the factfinder to consider is whether the kidnapping occurred during the commission of the other charged offense. See *State* v. *Johnson*, supra, 165 Conn. App. 290–91; *State* v. *Salamon*, supra, 287 Conn. 548.

[12] Although we acknowledge that the burglary charge against the petitioner is no longer pending given that the state entered a nolle on that charge following our reversal of the burglary conviction and remand on direct appeal; see *State* v. *White*, supra, 97 Conn. App. 783; this has no bearing on our analysis of the claim at present. "[A]s with any jury instruction claim, we must examine the issue or issues before the jury, including what was undisputed, and examine the charge 'in view of the factual posture of the case [at that time].' " *State* v. *Madigosky*, 291 Conn. 28, 40, 966 A.2d 730 (2009).

[13] As the respondent aptly points out in his brief, we note here that "the fact that no underlying crime has occurred does not bar a conviction for burglary," and that even "[i]f a defendant changes his mind after entering a building and does not, in fact, commit the intended crime, a burglary has occurred nonetheless." *State* v. *Flowers*, 85 Conn. App. 681, 691, 858 A.2d 827 (2004), rev'd on other grounds, 278 Conn. 533, 543, 898 A.2d 789 (2006).

[14] The prosecutor asserted during closing arguments that the state had successfully proven that the petitioner intended to commit *some* crime, although it could not identify *which* crime, stating: "[Defense] counsel claims that there is no evidence whatsoever of the defendant's intention to commit a crime. . . . [However] there is more than sufficient evidence from which you can infer that the defendant intended to either take money, property, assault, or sexually assault [the complainant] . . . ."

[15] Notably, the respondent concedes in his brief to this court that "if the petitioner's intent had been to steal from the [complainant], and his representation that he was armed constituted both the threat of force needed to carry out a robbery and a restraint of the [complainant] while he . . . search[ed] [for] valuables, then the petitioner and the habeas court would be correct that the restraint and threat of force elements overlapped to such an extent that a jury would need to determine whether the kidnapping was merely incidental to the robbery." Given the evidence presented at trial and how little we know about the jury's view of the case, however, the jury plausibly *could* have believed that the petitioner intended to commit a robbery when he entered the residence unlawfully. See General Statutes § 53a-133 ("A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: [1] Preventing or overcoming resistance

to the taking of the property or to the retention thereof immediately after the taking; or [2] compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."); see also footnote 14 of this opinion.

[16] "[T]he appropriate remedy for the instructional impropriety identified in *Salamon* is to reverse the defendant's kidnapping conviction and to remand the case to the trial court for a new trial. It is well established that instructional impropriety constitutes 'trial error' for which the appropriate remedy is a new trial, rather than a judgment of acquittal." *State* v. *DeJesus*, 288 Conn. 418, 434–37, 953 A.2d 45 (2008).

[17] We note that the petitioner did not raise this as a claim of error on appeal.

---